

**FILED**

MAY 2 5 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

Kevin Wheeler,               )
                             )
              Plaintiff,      )
                             )
v.                           )         16CV5591
                             )         JUDGE GUZMAN
Dynamex Operations East, Inc.,   )     MAG. JUDGE ROWLAND
                             )
              Defendant.      )

## COMPLAINT

Plaintiff Kevin Wheeler, *pro-se*, does hereby allege and states as follows:

### INTRODUCTION

1.  This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,*
    the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, and the Illinois
    Minimum Wage Law, 820 ILCS 105/1, and is brought to remedy violations by
    Dynamex Operations East, Inc., (hereafter collectively "Dynamex" or
    "Defendant") that has deprived the Plaintiff of overtime, minimum wage, other
    wages, and damages to which he is entitled to recover due to a scheme engaged
    in by the Defendant to willfully and intentionally misclassify the Plaintiff as an
    "Independent Contractor" rather than a common law employee.

2.  In addition, the Plaintiff seeks additional damages against the defendant for,
    retaliatory discharge for opposing unlawful labor practices in violation of
    Section 15 (a) (3) of the Fair Labor Standards Act of 1938, 52 Stat. 1068, 29 U.
    S. C. § 215 (a) (315(a)(3), as well as retaliatory discharge for filing a claim for
    benefits pursuant to the Illinois Workers Compensation Act.

1

3. Under Federal and Illinois law, employees must be paid 1.5 times their regular rate of pay for all hours over 40 worked in a week, unless they qualify for a statutory exemption.

4. Despite these statutory requirements, Dynamex required the Plaintiff to work without any overtime pay whatsoever when in fact his duties did not qualify him for overtime exempt status.

5. Dynamex also deducted amounts from the Plaintiff's wages for uniforms, equipment and occupational accident insurance that Dynamex required the Plaintiff to use in the course of his work for the Defendant. The deductions did not benefit the Plaintiff in any way, but rather, provided a ripe opportunity for the Defendant to shift their cost of business onto the Plaintiff.

6. Indeed, Theresa M. Hodgson, Purchased Transportation Supervisor for the Defendant states on her LinkedIn page, that, among other things she, "… increased deduction revenue by $2000 a month[1]" for the Defendant.

7. Dynamex intentionally and purposely misclassified the Plaintiff as an independent contractor, despite exercising extensive—if not exclusive control over the manner in which the Plaintiff conducted his work for the Defendant.

8. The Defendant's acts violated Federal and Illinois law, as well as Illinois public policy prohibiting the termination of an employee who exercises his or her rights under the Illinois Workers Compensation Act. Accordingly, Plaintiff seeks unpaid overtime compensation, an equal amount of liquidated damages, as well as compensatory, actual and punitive damages in addition to reasonable fees and costs, and all other available and appropriate relief to which he is entitled,

---

[1] https://www.linkedin.com/in/teresa-m-hodgson-0b87086 Accessed 5/14/16

including, but not limited to reimbursement of mileage, vehicle maintenance and fuel costs.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and 1337.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims in the FLSA action that they form a part of the same case or controversy.

11. Venue is proper in this district under 28 U.S.C. § 1391 because the acts or omissions giving rise to claims in this Complaint primarily took place in the Northern District of Illinois. The Court also has jurisdiction under 28 U.S.C. §1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, and because the parties are residents of different states.

## PARTIES

12. Plaintiff Kevin Wheeler is an individual residing in the Northern District of Illinois, with his wife and two minor children.

13. The Plaintiff worked for the Defendant from approximately December, 2011, until his termination on or about December 1, 2014.

14. Defendant Dynamex is and at all relevant times has been engaged in the business of delivery services in the State of Illinois. Dynamex is incorporated in Delaware and is a wholly owned entity of Transforce, Inc. Dynamex owns and operates under a number of different names and/or entities, which are headquartered in Dallas, Texas, including, but not limited to, Dynamex Inc.,

Dynamex Fleet Services, Inc., Dynamex Operations East, Inc. and Dynamex Operations West, Inc. Dynamex has places of business at various locations in Illinois, including but not limited to 1200 Kirk Street, Elk Grove Village, Illinois 60007, which is within the jurisdiction of this Court. It is registered to do business in Illinois and retains a registered agent within Illinois.

15. Dynamex states that it "...is an entrepreneurial-minded transportation services company, competing in Canada and the USA with a specific focus on same-day logistics and outsourced transportation services[2]."

**FACTUAL ALLEGATIONS**

16. Dynamex required Plaintiff and all other drivers, couriers and delivery drivers to sign a contract designating them as independent contractors.

17. While Plaintiff had been designated by Dynamex as an independent contractor, Dynamex actually controlled and directed the performance of the Plaintiff's work; the Plaintiff's work was within Dynamex's usual course of business as a shipping company, and; the Plaintiff was not in an independently established trade, occupation, profession or business.

18. The Plaintiff was hired by the defendant as an "independent contractor" delivery driver in December, 2011, until his employment was terminated by the defendant in or around December, 2014.

19. The Plaintiff's work for the Defendant required no special skill. The Plaintiff was assigned a route by the Defendant that started at the same time every day and made deliveries to the same long term care facilities each day.

---

2  www.dynamex.com/about-us/ accessed 5/14/16

20. The Plaintiff picked up his deliveries exclusively from Heartland Pharmacy of Illinois, LLC, a closed door pharmacy located at 940 South Frontage Road Woodridge, Illinois, and delivered the medications to long term care facilities, under the "Heartland" or "Manorcare" name.

21. The Defendant assigned a schedule for which the Plaintiff had to adhere to. The Plaintiff had to work, at a minimum, Monday thru Saturday.

22. On average, the Plaintiff worked 28 days a month for the Defendant, typically working 13 days consecutively before receiving one day off.

23. The Plaintiff's primary routes included deliveries to Homewood, South Holland, Kankakee, Paxton, and Champaign, Illinois, which eventually changed to Moline and Henry, Illinois, as well as Davenport, Iowa. The Plaintiff also made deliveries to East Peoria, Peoria, Canton, Decatur and Normal, Illinois approximately every other Sunday.

24. The Plaintiff regularly drove 300-400 miles per day in his own vehicle at his own expense for the benefit of the Defendant.

25. The routes at Heartland were scheduled to start or "launch" at the same time every day. Monday thru Saturday, routes "launched" at 1:00 PM, 10:00 PM and 1:00 AM. On Sunday, all routes were scheduled to "launch" at 7:30 PM.

26. The Plaintiff was required to contact the defendant's dispatcher at least one hour prior to his scheduled "launch" each day.

27. The Plaintiff was required to arrive at Heartland Pharmacy at least 15 minutes prior to each routes "launch" time.

28. The Defendant established and maintained a sign-in log at Heartland. The Plaintiff was required to sign in each day with the time that he arrived at the Pharmacy, as well as the time that he departed upon the completion of his route.

29. In addition, the Plaintiff was required to adhere to the Defendant's grooming and uniform policies. These policies were well documented by the Defendant.

30. The Defendant posted a picture showing and describing the uniform requirements that the Plaintiff was required to comply with. (See Exhibit A)

31. This document, entitled, "Dynamex Uniform Requirements," among other things, required the Plaintiff to wear his Dynamex shirt which was required to be tucked in, clean and pressed, with no holes. The Plaintiff also was required to have his Dynamex photo ID visible and present at all times. *id.*

32. These same requirements were also published in an extensive "Work Instruction" document that was published and disseminated by the Defendant. These work instructions and rules provided the Defendant significant control over the Plaintiff and his work day. (See Exhibit B)

33. The Defendant took wearing its uniform seriously. On several occasions, Peter Malinas ("Malinas"), operations supervisor for the Defendant, threatened to terminate the Plaintiff for not wearing his complete uniform.

34. For example, the work instructions dictated the Plaintiff was required to follow the order of the deliveries as established by the Defendant. The Plaintiff was not allowed to deviate from this order.

35. Rule 5.4.1 of the "Work Instruction" document stated that the, "IC (Plaintiff) to deliver TPE (totes/products and equipment) to destination as stated on stop

sequence from Dynamex driver manifest (must be conducted in order. IC is not to deviate from this sequence.)"

36. Separately, in a letter dated November 14, 2013, Defendant's then operations supervisor for the Heartland account, Timothy Vana, ("Vana") wrote a memo to Antwane Clark, another driver for the Defendant who worked with the Plaintiff at Heartland. In it, Vana wrote "...be advised that the order of the route WILL be changing, but DO NOT change it until we tell you to" (no emphasis added, see Exhibit C).

37. The Defendant also created a "Delivery Driver Breakdown Contingency Action Plan," which detailed the steps that the Plaintiff would have to undertake in painstaking detail in the event of a breakdown. (See Exhibit D)

38. The Defendant also created a spreadsheet that showed the specific order in which the routes had to be completed. In addition, the spreadsheet shows the times in which the deliveries were to be made by. (See Exhibit E)

39. Malinas would regularly post a spreadsheet showing which driver(s) were making their deliveries on time, and which ones were not.

40. On at least one occasion, Malinas rode with the Plaintiff during his route to determine the reason(s) why the Plaintiff was not able to make his deliveries by the time required by the Defendant.

41. The Plaintiff could not come and go as he pleased; if he wanted to take time off, he was required to submit a "time off request" to the Defendant. Depending on the length of time the Plaintiff wanted off, the Plaintiff could be required to provide one to two weeks advance notice. The Defendant could deny or cancel the requested time off solely at its discretion.

42. The Plaintiff also could not refuse to work routes. On March 14, 2012, the Defendant released a memo directed to "All Heartland Drivers" in which the Defendant told the Plaintiff in writing that, "**...you will be required to work these holidays.**" The memo ended with the following warning: "**... you are responsible to cover your route and failure to do so will result in disciplinary action – including up to removal of your route.**" (No emphasis added, see Exhibit F)

43. Separately, the Defendant created, posted, and disseminated a document to the Plaintiff to contact its dispatch center in the event that an issue arose. The document stated that the Defendants employees would make the decision on how to proceed and stated that he Plaintiff should never make a decision on his own.

44. The Defendant developed and advertised a "wait-time" scheme where the Plaintiff was due to be compensated in the event that the route was not ready in time, which was often the case.

45. On multiple occasions, the Plaintiff was required to wait at Heartland for more than two hours due to delays by Heartland Pharmacy and/or the Defendant. Delays of 30 minutes or more were a regular occurrence.

46. The Plaintiff was not allowed to leave the pharmacy during this "waiting" period.

47. After the first time in which the Plaintiff had to wait more than two hours for the route to be ready, the Plaintiff realized that he was not compensated for "wait time" on his check. The Plaintiff spoke with Malinas, who told the Plaintiff that, "due to the difficult nature of the client (Heartland), we've (Dynamex) decided not to bill them for wait time." In nearly three years of employment, the Defendant never compensated the Plaintiff for any "wait time."

48. The Defendant provided a route dispatcher, who was a regularly employed, common law employee of the Defendant who worked at Heartland Pharmacy at or near the time that the routes were supposed to be launched.

49. After the regularly employed dispatcher for the Defendant was moved to a different job location, the Plaintiff was offered an opportunity to fill in as a dispatcher for the Defendant by Vana.

50. From approximately June, 2013 through December, 2014, the Plaintiff worked as a "dispatcher" for the Defendant.

51. The Plaintiff was paid a fixed rate of $30 for each day that the Plaintiff performed the dispatcher duties, but was paid as an "independent contractor" to perform the same duties that regular employees for the Defendant normally performed.

52. The Plaintiff logged into the Defendant's computer system, generating routes and printing route manifests for himself and the other drivers.

53. Employees who work for the Defendant in the role as "dispatcher" receive overtime compensation at one-and-a-half times their regular rate for all hours worked over 40 in a week, and enjoy other benefits that come with being regularly employed for the Defendant, including, but not limited to mileage and expense reimbursement, benefits, paid holidays, tuition reimbursement, vacation, retirement plan and contributions to Social Security and Medicare, as well as workers compensation and unemployment insurance benefits.

54. Although the Plaintiff performed the same work, and in fact was trained to do the same work as its own common law employee dispatchers, the Defendant never considered the Plaintiff an employee nor did he receive any of the same benefits.

55. The Plaintiff, on occasion, would receive a fuel surcharge depending on the average price of fuel. The fuel surcharge, on average, equated to *¼ of one cent per mile or less*. The Defendant refused to negotiate a more reasonable fuel surcharge with the Plaintiff.

56. On multiple occasions, the Plaintiff sought to increase his pay, whether through discussions with Vana and Malinas, or though more formal communications with branch manager Adam Phillips, Dynamex President Scott Leveridge, and Purchased Transportation Manager Teresa Hodgson. In every circumstance, the Defendant refused to negotiate or otherwise discuss his pay.

57. The Plaintiff was not in business for himself. Rather, he was fully integrated into the operations of the Defendant.

58. The work relationship between the Plaintiff and Defendant was not meant to be short term nor did it contain a certain end date. Rather, it lasted for nearly three years, until the time that the Defendant terminated the Plaintiff's employment.

59. The Plaintiff did not and could not seek out other opportunities to work as the demand placed upon him by the Defendant made doing so virtually impossible.

60. Plaintiff was paid for his work based on a pre-determined rate set by the Defendant. The Plaintiff could not negotiate the rate of pay that he received. The pay was the same regardless of the time it took the Plaintiff to complete his work.

61. The Plaintiff had no opportunity to realize a profit without Dynamex. The Defendant paid the Plaintiff substantially less than the applicable Internal Revenue Service mileage rate. Further, he could not deal directly with the long-term care pharmacies or nursing homes to offer his delivery services. Instead, he had to go through Dynamex to provide this service.

62. During the Plaintiff's employment, the Defendant deducted anywhere from $40.61 to $86.61 from each of Plaintiff's bi-weekly paychecks for an inoperable Blackberry® phone, uniforms, an occupational accident insurance "fee," and occupational accident insurance, all of which the Defendant required the Plaintiff to obtain from Defendant and maintain at all times.

63. The Defendant performed all payroll and accounting. The Plaintiff did not submit anything to the Defendant in order to be paid. All paychecks were remitted via direct deposit to the Plaintiff.

64. The Plaintiff typically worked in excess of 52 hours a week, but never received overtime pay. The Plaintiff was also required to use his own vehicle, logging, on average, over 2,350 miles per week, without expense reimbursement.

65. Plaintiff was not in business for himself, but rather depended on Dynamex's business for the opportunity to render services to the long-term care pharmacies and nursing homes they served. The Defendant's operations and business are entirely dependent on drivers like the Plaintiff.

66. The Plaintiff worked exclusively for Dynamex up until November, 2014, when the Plaintiff obtained regular full time employment with a different company. The Plaintiff never advertised his services, and the Plaintiff did not nor did he attempt to contract with other customers.

67. Despite obtaining regular, full-time employment, the Plaintiff continued to drive for the Defendant on Friday and Saturday nights, up until the time that the Plaintiff was terminated by the Defendant in December, 2014.

68. Dynamex's business, among other things, is to deliver prescriptions from long-term care pharmacies to nursing homes and other long-term care facilities,

among other customers. In order to conduct this business, Dynamex engages drivers, couriers and delivery drivers to pick the prescriptions up from the long-term care pharmacy and deliver them to their designated recipients.

69. Plaintiff's relationship with Dynamex was not intended to be temporary nor sporadic. Rather, Plaintiff worked full-time for Dynamex for approximately 3 years, until the time that Dynamex terminated the Plaintiff.

70. Dynamex, which is subject to FLSA requirements, is an employer within the meaning of the FLSA. Dynamex is the employer of Plaintiff in the instant action.

71. Dynamex required the Plaintiff to use a specialized scanner, which the Plaintiff was required to acquire from the Defendant. In addition, Dynamex required the use of a Blackberry phone (later an Android phone) and GPS.

72. The Plaintiff's work was performed for the benefit of the Defendant, in the normal course of the Defendants' business and the Plaintiff was integrated into the business of the Defendant.

73. The work performed by the Plaintiff required little skill. The Plaintiff's duties did not include managerial responsibilities nor did the Plaintiff exercise independent judgment. The Plaintiff was not engaged in making sales, and did not drive vehicles weighing over 10,000 pounds.

74. Dynamex, which is subject to FLSA requirements, is an employer within the meaning of the FLSA. Dynamex is the employer of Plaintiff in the instant action.

75. Dynamex's violations have been willful and intentional in that it has known all along that Plaintiff worked more than forty hours per week, and the requirements of the law required that the Defendant pay the Plaintiff overtime pay, but it refused to do so.

76. Defendant has been sued on multiple occasions with similar allegations and has settled many similar claims regarding independent contractor misclassification in the past.

77. As a result of Dynamex's willful violations of the FLSA and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105 ("IMWL"); the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115 ("IWPCL") and related regulations, 56 Ill. Admin. Code §210 and 56 Ill. Admin. Code §300 (collectively the "Illinois Wage Laws"), Plaintiff has suffered damages in that he did not receive proper compensation in accordance with the FLSA and Illinois Wage Laws.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201 *et seq.*

78. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77 as if they were set forth again herein.

79. Defendant has engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint and through the use of supporting exhibits.

80. At all times relevant, Plaintiff was employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

81. At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

82. At all times relevant, Defendant has been the employer of Plaintiff, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

83. The overtime wage provisions set forth in the FLSA. 29 U.S.C. §§ 210 *et seq.*, and supporting federal regulations apply to Defendant and protect Plaintiff.

84. Defendant has failed to pay Plaintiff overtime wages for hours that he worked in excess of 40 hours in a workweek.

85. Based on the foregoing, Dynamex's conduct in this regard was a willful violation of the Fair Labor Standards Act and entitles Plaintiff to compensation for all overtime hours worked, liquidated damages, restitution, reasonable fees and court costs.

86. Due to the willful nature of the Defendant's decision to improperly classify the Plaintiff as an independent contractor, the Plaintiff seeks a three year statute of limitation of all issues so related to the Fair Labor Standards Act.

## SECOND CAUSE OF ACTION
## ILLINOIS MINIMUM WAGE LAW

**820 Ill. Comp. Stat. 105/4a; 56 Ill. Admin. Code §210.400 *et seq.*
– Unpaid Overtime**

87. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

88. At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the Illinois Minimum Wage Law. At all relevant times, Defendant employed the Plaintiff within the meaning of the Illinois Minimum Wage Law.

89. Illinois law requires employers to pay their employees an amount equal to or greater than the minimum amount set forth by Illinois law.

90. Further, Illinois law requires employers, such as Defendant, to pay overtime compensation to all non-exempt employees for all hours worked over forty per work week.

91. Plaintiff was a non-exempt employee entitled to be paid at least a minimum wage and overtime compensation for all overtime hours worked.

92. Throughout the employment period, the Plaintiff regularly worked in excess of forty hours in a workweek.

93. Defendant engaged in a widespread pattern, policy, and practice of violating the overtime provisions of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/4a, and supporting IDOL regulations, 56 Ill. Admin. Code §210.400 *et seq.*, as detailed in this Complaint.

94. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, the Plaintiff has sustained damages, including loss of earnings for hours of overtime worked, and the failure to pay a minimum wage in an amount to be established at trial, with the Plaintiff seeking recovery of prejudgment interest, costs, fees and restitution, consistent with the statute.

95. Section 105/12(a) of the IMWL imposes a penalty upon employers in the amount of 2% of all wages and monies owed for each month that the underpayment remains unpaid. Therefore, the Plaintiff seeks restitution consistent with section 105/12(a) of the Act.

### THIRD CAUSE OF ACTION
### ILLINOIS WAGE PAYMENT AND COLLECTION ACT

**820 Ill. Comp. Stat. 115/9 and 115/14 56 Ill.**
**Admin. Code §300.700 *et seq.* Unlawful Wage Deductions;**
**Failure to Pay Final Wages**

96. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

97. Defendant engaged in a widespread pattern, policy, and practice of violating 820 Ill. Comp. Stat. 115/9 and 115/14, as detailed in this Complaint.

98. At all times relevant, Plaintiff was an employee within the meaning of 820 Ill. Comp. Stat. 105/3(d) and 820 Ill. Comp. Stat. 115/2 and supporting IDOL Regulations.

99. At all times relevant, Defendant has been an employer within the meaning of 820 Ill. Comp. Stat. 105/3(c) and 820 Ill. Comp. Stat. 115 and supporting IDOL Regulations.

100.    The Illinois Wage Payment and Collection Act and supporting IDOL Regulations apply to the Defendant and protect the Plaintiff.

101.    By conduct described herein, the Defendant made unlawful deductions from Plaintiff's wages in violation of 820 Ill. Comp. Stat. 115/9 and 56 Ill. Admin. Code §300.700 *et seq.* Defendants deducted wages from Plaintiff's paychecks for uniform purchases, for occupational accident insurance, fees related to the Occupational Accident Insurance policy, as well as a specialized cellular phone all of which Defendants required the Plaintiff to use in the course of his work for Defendants.

102.    In addition, the Defendant did not pay the Plaintiff all of the wages for which he was entitled to receive, including, but not limited to, overtime and expense reimbursement.

16

103.    Section 115/14(a) of the Illinois Wage Payment and Collection Act imposes a penalty upon employers in the amount of 2% of all wages and monies owed for each month that the underpayment remains unpaid. Therefore, the Plaintiff seeks restitution consistent with section 115/14(a) of the Act.

### FOURTH CAUSE OF ACTION
### RETALIATORY DISCHARGE

104.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

105.    In or around October, 2013, the Defendant presented a new and updated "Independent Contractor" Agreement for the Plaintiff to sign.

106.    The Defendant attached a cover letter to the agreement stating that Dynamex "desired" to enter into a new contract with the Plaintiff. (See Exhibit G and H)

107.    The Plaintiff was presented with two options: 1) execute and return the agreement within 10 days, or 2) initiate negotiations with the Defendant to alter the terms of the agreement or to seek negotiate the terms of the agreement.

108.    At the time that the Defendant produced the new agreement, the Plaintiff had worked for the Defendant for nearly two years.

109.    The Plaintiff chose to attempt to negotiate terms with the Defendant that reflected the reality of the working relationship, as well as to seek an increase in pay.

110.    In or around November, 2013, the Plaintiff met with management for the Defendant at their office in Wood Dale, Illinois.

111.    The Defendant refused to negotiate any terms with the Plaintiff.

17

112.     Absent a willingness to negotiate terms that were more reasonable or fair for the Plaintiff, the Plaintiff declined to sign the new Agreement.

113.     The Plaintiff continued to work for the Defendant for approximately one year without issue.

114.     In or around October, 2014, the Plaintiff was repeatedly contacted by the Defendant's Purchased Transportation Supervisor, Teresa Hodgson.

115.     Hodgson repeatedly threatened the Plaintiff with termination unless the Plaintiff signed the new Agreement immediately.

116.     The Plaintiff expressed to Hodgson both verbally and in writing that the Agreement, as presented, did not pair with the reality of the level of control exerted over the Plaintiff by the Defendant and further expressed concerns to Hodgson that in reality an employer-employee relationship existed between the parties.

117.     The Plaintiff, in good faith, then attempted to negotiate terms with the Defendant.

118.     Quite simply, the Plaintiff asked the Defendant to define his "portion" of the fuel surcharge with certainty.

119.     On November 6, 2014, at 6:10 AM, Hodgson wrote an email response back to the Plaintiff, telling him that, "There is no altering the contract, you either need to sign it as is or not."

120.     The Plaintiff did not sign the new Agreement, and on November 7, 2014, at 2:54 PM, Hodgson informed the Plaintiff that he was disqualified and could no longer drive for the Plaintiff.

121.    On 11/25/14, Hodgson contacted the Plaintiff again, reminding him that he was not active as a driver for Dynamex and asked the Plaintiff if he was still interested in contracting with the Defendant.

122.    On Monday, December 1, 2014, at 7:54 AM, the Plaintiff responded to Hodgson. Notably, the Plaintiff told Hodgson, "...the agreement does not reflect the realities of the work and requirements incumbent upon me (and the other drivers) at Heartland..."

123.    In turn, Hodgson summarily terminated the Plaintiff's employment at 8:08 AM on December 1, 2014.

124.    The Plaintiff was terminated due to his filing of a complaint regarding his treatment as an independent contractor and the Defendant's failure to pay the Plaintiff overtime and reimburse him for his expenses.

125.    By virtue of its conduct, the Defendant violated 15(a)(3) of the FLSA when it terminated the Plaintiff for opposing unlawful and unfair work practices engaged in by the Defendant.

## FIFTH CAUSE OF ACTION
### PUBLIC POLICY VIOLATION
### RETALIATORY DISCHARGE FOR ENGAGING
### IN PROTECTED ACTIVITY

126.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

127.    On March 22, 2014, the Plaintiff sustained an injury while working for the Defendant.

128.    The Plaintiff sought medical care as a result of his injury.

129.    On June 29, 2014, the Plaintiff informed the Defendant via written communication that he had been injured while in the course of his work for the Defendant and that he needed surgery to repair his elbow, and that he was seeking benefits pursuant to the Illinois Workers Compensation Act.

130.    On June 30, 2014, the Plaintiff initiated claim 14WC022146 with the Illinois Workers Compensation Commission.

131.    In July, 2014, the Plaintiff underwent surgery and returned to work on or about August 1, 2014, per his surgeons instructions.

132.    On October 31, 2014, the Hodgson sent the Plaintiff a new copy of the Agreement. In it, Addendum C specifically stated that, "Contractor is not legally entitled to pursue workers compensation claims through or against Dynamex...and further agrees to indemnify Dynamex for all costs incurred with...defending against any workers compensation claim."

133.    Dynamex knew at all times that the Plaintiff was an improperly classified employee.

134.    On December 1, 2014, the Plaintiff alerted Hodgson to the fact that the Agreement would prevent the Plaintiff from bringing or maintaining a workers compensation claim against the Defendant.

135.    On December 1, 2014, Hodgson terminated the Plaintiff for engaging in the protected activity of filing a workers compensation claim in violation of Illinois Public Policy.

**WHEREFORE**, Plaintiff claims:

a) Overtime wages under the Fair Labor Standards Act and the Illinois Minimum Wage Law;

b) Liquidated damages under the Fair Labor Standards Act and the Illinois Minimum Wage Law;

c) Appropriate statutory penalties, including, but not limited to damages equal to 2% of the underpayment to the Plaintiff by the Defendant for each month of underpayment pursuant to 115/14 of the Illinois Wage Payment and Collection Act and 105/12(a) of the Illinois Minimum Wage Law;

d) Restitution for automobile expenses, including, but not limited to fuel, maintenance, mileage, tolls, insurance premium increases and deductibles;

e) An additional award for adverse tax consequences to make the Plaintiff "whole;"

f) Actual damages;

g) Compensatory damages;

h) Punitive damages;

i) Pre-Judgment and Post-Judgment interest, as provided by law;

j) Reasonable fees and costs under the Fair Labor Standards Act and the Illinois Wage Laws, including expert fees and costs (if any), and;

k) Such other injunctive and equitable relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated: May 25, 2016

Respectfully Submitted,

Kevin Wheeler
667 Turtledove Lane
New Lenox, IL 60451-8301
630.333.6295
gwheelock915@sbcglobal.net

# EXHIBIT

# A



# EXHIBIT

# B

| Dynamex Work Instruction | Work Instruction No.: |
|---|---|
| Reference: Level II Document Data Control | DEL_Heartland_100 |
| Requirements 7.0 | Revision Issue No: 2.2 |
| Title: Heartland Delivery SOP | Revision Effective Date: 12/21/2011 |
| Page 1 of 6 | |

**1.0    SCOPE**

This document provides the work instruction necessary for the Independent Contracted Driver (Independent Contractor) to meet the requirements for the pickup and delivery of Heartland Pharmacy of Illinois, LLC products. (Moving forward, Heartland Pharmacy of Illinois, LLC will be referred to as 'Heartland'.)

**2.0    RESPONSIBILITY AND AUTHORITY**

The Operations / Quality Management Representative is responsible for maintaining this procedure. Management is responsible for enacting this procedure and for its' continuous implementation

**3.0    DEFINITIONS**

Driver - Dynamex Independent Contracted Driver
Heartland - Heartland Pharmacy of Illinois, LLC
HIPAA – Health Insurance Portability and Accountability Act
IC – Independent Contractor
**TPE – Totes, Products and Equipment**

**4.0    REQUIREMENTS**

4.1    Vehicle requirement – minivan

4.2    HIPAA training for all parties involved with Heartland

4.3    All independent contractors must wear Dynamex uniform when delivering for Heartland account including proper Dynamex identification

4.4    Real-time scanning of POD by use of handheld scanners and blackberry

4.4.1    Refer to Work Instruction: DEL_Heartland_101 Rev 1.0 – Scanning Process

4.5    Chain of custody sign-off forms and process

4.6    Return of totes, products and equipment back to Heartland in Woodridge, IL

**5.0    PROCEDURE**

5.1    **Prior to Start of Designated Route**

5.1.1    Ensure gas tank is full

5.1.2    Upon arrival at Heartland-Woodridge, IC is to check-in with Dynamex – Heartland account dispatcher prior to the release of designated route and utilizing the sign-in log

5.1.3    IC is not have any personal items in the cargo area

5.1.4    IC is to have hand sanitizer, latex gloves and fire extinguisher in vehicle

5.1.5    Proceed to Step 5.2 - Pickup of Totes and Products at Heartland

5.2    **Pickup of Totes, Products & Equipment at Heartland**

5.2.1    Independent Contractor (IC) to make pickup of Heartland totes, products & equipment (TPE) at Woodridge location: 940 S. Frontage Rd., Woodridge, IL

5.2.2    Check in with dispatcher to determine if there are any changes or additions to assigned

Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Signature: _____        Date: _____

| Dynamex Work Instruction | Work Instruction No.: |
|---|---|
| Reference: Level II Document Data Control | DEL_Heartland_100 |
| Requirements 7.0 | Revision Issue No: 2.2 |
| Title: Heartland Delivery SOP | Revision Effective Date: 12/21/2011 |
| Page 2 of 6 | |

route

5.2.3   Receive delivery manifest from dispatcher

5.2.4   Refresh Blackberry Handheld to ensure you have (the most) updated driver manifest / correct load stop sequence on DecsMobile

5.2.5   **NOTE**: Verify totes, products and equipment by manually marking the TPE boxes on the inventory check-off boxes (located atop of each station stop on the driver manifest) to ensure accurate customer order delivery. This is used by the IC to determine how many TPE are needed for delivery at each nurse's station / location stop. This can also be used to verify the number of items returned (if applicable)

  5.2.5.1   **NOTE**: IC has a potential total of 6 items to deliver: (**Grey**) **Totes, PST Boxes, IV Coolers, IV EDK Boxes (informally called "INJ / Injectible Boxes"), Medical Records, and IV Pumps (equipment) to consignee - Manor Care facilities**

5.2.6   IC is to gather and group all TPE to be delivered (refer to steps 5.2.5.1 above), sort according to stops / locations, and proceed to Step 5.3 - Load Scanning

5.3   **Load Scanning**

5.3.1   Scan all tote order manifests and products (PST Boxes, IV coolers, IV EDK boxes) with assigned hand-held scanner

5.3.2   Load vehicle according to stop sequence to ensure efficient retrieval and delivery of TPE

5.3.3   **NOTE**: IC is to conduct one more glance of 'Back-Room' area for any TPE the IC may have missed to ensure they have all products to deliver.

5.3.4   Inform the dispatcher you are leaving and start route via DecsMobile

5.3.5   Proceed to Step 5.4 – Delivery of Totes, Products & Equipment

5.4   **Delivery of Totes, Products & Equipment (TPE)**

5.4.1   IC to deliver TPE to destination as stated on stop sequence from Dynamex driver manifest (must be conducted in order. IC is not to deviate from this sequence)

5.4.2   Upon delivery, the IC is to lock vehicle while in facility. The IC is to ensure Dynamex photo ID is visible

5.4.3   Enter facility with TPE and proceed to nursing stations to begin delivery

  5.4.3.1   **As reference, refer to Form XXX for list of Heartland TPE associated** with each nursing stations at all Manor Care facilities

  5.4.3.2   **NOTE: All TOTES and NARCOTIC PRODUCTS are to be considered '1-for-1' meaning you cannot deliver these products unless you have a return to exchange. The following are considered narcotics products:**

Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Signature: _____   Date: _____

| Dynamex Work Instruction | Work Instruction No.: |
|---|---|
| Reference: Level II Document Data Control | DEL_Heartland_100 |
| Requirements 7.0 | Revision Issue No: 2.2 |
| Title: Heartland Delivery SOP | Revision Effective Date: 12/21/2011 |
| Page 3 of 6 | |

PST Boxes, IV EDK boxes (AKA 'INJ / Injectible boxes')

5.4.4  Upon start of the delivery process, the IC is to scan the barcode on the order manifests from the GREY TOTES at nurse's station to capture proof of delivery

    5.4.4.1  **NOTE: when delivering a tote, the IC must exchange / return a tote back to Heartland – Woodridge. This tote MUST have an <u>orange</u> seal if product is being returned back to the pharmacy. If there is no product being returned back, then an orange seal is not required. <u>NO chain of custody form is needed for tote returns.</u>**

    5.4.4.2  **NOTE: For delivery of narcotic products: PST Boxes, IV EDK boxes (AKA 'INJ / Injectible boxes') The IC is to perform and complete the Chain of Custody process when delivering to each nurse's station. Refer to Chain of Custody Step-by-Step Process on Step 5.5 (below)**

    5.4.4.3  **NOTE:** If handheld scanning system is "down", the IC is to complete and retrieve PODs the manual method by obtaining signatures of the necessary paperwork associated with the products - including the Dynamex delivery manifest

    5.4.4.4  **NOTE:**

        5.4.4.4.1  When delivering a narcotics box you must have a **NURSE** sign for the box.  **NEVER** deliver a narcotics box **without picking up a narcotics box.**

        5.4.4.4.2  Make sure narcotics boxes being delivered have **BLACK** seals and make sure narcotic boxes being picked up have **RED** seals.

        5.4.4.4.3  **NEVER** pick up an unlocked narcotics box.

        5.4.4.4.4  **ONLY** a **nurse** can apply the seal on any narcotics products. If they push back, **KINDLY** state this is a Heartland process procedure and is needed

        5.4.4.4.5  **NOTE:** If you pickup/exchange a narcotics box with a black seal, <u>this is to indicate the box was never opened</u>. The IC is allowed to pickup and exchange but must still follow Chain of Custody processes.  Refer to steps 5.5 - Chain of Custody Step-by-Step Process

5.4.5  For Products and Equipment,  IC is to scan bar codes one at a time

5.4.6  Have the nurse sign the Dynamex driver manifest to capture their proof of delivery (POD) from each nurse's station (having a delivery for that stop) on the Dynamex driver manifest.

    5.4.6.1  **NOTE**: Be sure to have a legible signature, printed name, date and time to capture with your scanner on all Dynamex Driver manifests

    5.4.6.2  **NOTE:** If a nurse's station **does not have a tote or product to be delivered,**

| Dynamex Work Instruction | Work Instruction No.: |
|---|---|
| Reference: Level II Document Data Control Requirements 7.0 | DEL_Heartland_100 |
| | Revision Issue No: 2.2 |
| Title: Heartland Delivery SOP | Revision Effective Date: 12/21/2011 |
| Page 4 of 6 | |

the IC is to input the proper exception code on DecsMobile to note the un-delivery of TPE at nurse's station – "NO PRODUCT"

5.4.7    Proceed to remaining nursing stations, repeating the same process until finished at the facility and proceed to exit, continuing upon your route

     5.4.7.1   **NOTE: If IC ever has any problems, questions, or just unsure about a situation, always call dispatch. Always inform dispatch of any problems or situations which may arise during the course of route**

5.4.8    **NOTE: Remember to always be polite to facility residents and staff, they are our customers and good customer service is an integral part of any business.**

**5.5**     **Chain of Custody Step-by-Step Process**

5.5.1    The purpose of this process is to ensure the integrity of the narcotics products and theft prevention

     5.5.1.1   **NOTE**: This process is to be conducted when a '1-on-1' exchange occurs with the following narcotic products: **PST boxes, IV EDK boxes (AKA 'INJ / Injectible Boxes').** When exchanging a narcotics product with a Manor Care nurses stations, the IC is to only exchange a narcotics product if given one back for a return. The IC is to **NEVER** deliver a narcotics product without an exchange – unless stated otherwise by Heartland management

5.5.2    When the IC delivers a narcotics product to a nursing station, the returning and exchanged product is to:

     5.5.2.1   Have a **RED** seal

          5.5.2.1.1    If it does not contain a red seal, have the station nurse place a red seal on the product to prevent tampering

     5.5.2.2   The IC is to retrieve the paperwork encased in the clear folder (attached to the product) from the delivered product

     5.5.2.3   Have the nurse document the seal number of the returning narcotics product onto the chain of custody form

     5.5.2.4   Both the IC and nurse is to sign the chain of custody form

     5.5.2.5   Place the signed and completed chain of custody form into the sleeve of the returned/exchanged product   (that is to be RETURNED to Heartland – Woodridge)

**5.6**     **Return of Totes, Products & Equipment to Woodridge**

5.6.1    IC is to sign in upon arriving at Heartland –Woodridge utilizing sign-in log.

5.6.2    All returned / exchanged totes, products and equipment must be returned to Heartland –

| **Dynamex Work Instruction** | **Work Instruction No.:** |
|---|---|
| Reference: Level II Document Data Control | DEL_Heartland_100 |
| Requirements 7.0 | Revision Issue No: 2.2 |
| Title: Heartland Delivery SOP | Revision Effective Date: 12/21/2011 |
| Page 5 of 6 | |

Woodridge immediately after delivery of route

5.6.3   Grey Totes can be neatly placed in the 'Back-Room' area

5.6.4   PST boxes must be properly placed on assigned / numbered shelving according to box numbers

5.6.5   IV Pumps & IV Coolers are to be placed on the shelving by the 'cage'

5.6.6   Place all paperwork into designated bins for submittal

## 5.0   RELATED DOCUMENTATION

| Reference/Form # | Reference/Form Name | Description of Reference/Form |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Signature: _____     Date: _____

| **Dynamex Work Instruction** | **Work Instruction No.:** |
|---|---|
| Reference: Level II Document Data Control | DEL_Heartland_100 |
| Requirements 7.0 | Revision Issue No: 2.2 |
| Title: Heartland Delivery SOP | Revision Effective Date: 12/21/2011 |
| Page 6 of 6 | |

**6.0     APPROVAL SIGNATURES**

| | Date: |
|---|---|
| Signature & Title | |
| Signature & Title | Date: |

Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Signature: _____          Date: _____

# EXHIBIT

# C

11-14- 1PM

Antwane -

I want to make sure that you were able to get your route in your phone tonight. Also, be advised that the order of the route WILL be changing, but DO NOT change it until we tell you to. Naperville will become the first stop. Then Palos - Oak Lawn, Hinsdale, Westmont. We will let you know when. — I just got word — The change will start Monday - 11-19. Call me and let me know you understand. Also, DO NOT talk to any Nursing Home personelle about the change. This is very important. If for any reason they ask a question, refer them to Dee Wagley at Heartland.

Tim

# EXHIBIT

# D

# HEARTLAND

## DELIVERY DRIVER BREAKDOWN

# CONTINGENCY ACTION PLAN

| **Dynamex Work Instruction** Reference: Level II Document Data Control Requirements 7.0 Title: Heartland Delivery Driver Breakdown Contingency Plan Page 1 of 3 | **Work Instruction No.:** DEL_Heartland_103 Revision Issue No: 1.0 Revision Effective Date: 08/24/2012 |
|---|---|

**1.0    SCOPE**

This document provides the work instruction necessary for the Independent Contracted Driver (Independent Contractor) to meet the requirements for the pickup and delivery of Heartland Pharmacy of Illinois, LLC products. (Moving forward, Heartland Pharmacy of Illinois, LLC will be referred to as 'Heartland'.)

**2.0    RESPONSIBILITY AND AUTHORITY**

The Operations / Quality Management Representative is responsible for maintaining this procedure. Management is responsible for enacting this procedure and for its' continuous implementation

**3.0    DEFINITIONS**

Driver - Dynamex Independent Contracted Driver
Heartland - Heartland Pharmacy of Illinois, LLC
IC – Independent Contractor
TPE – Totes, Products and Equipment

**4.0    REQUIREMENTS**

4.1    Heartland delivery driver to provide proof that they have jumper cables, a spare tire that is designed for the vehicle, tire changing equipment (i.e., tire iron, lug nut keys, jack) and demonstrate that they know how to use that equipment.

4.2    Cell phone

4.3    Heartland Pharmacy's facility phone List to use for delivery delay emergencies for after hours.

4.4    Heartland delivery drivers will have a copy of the SOP with the necessary phone numbers in their vehicles. All drivers to acknowledge they have read and understand the SOP

4.5    Dynamex / Heartland Account Manager and Dispatchers will have a copy of the SOP in the dispatch office with the necessary phone numbers. **ALL** shift dispatchers will acknowledge that they have read and understand the SOP

**5.0    PROCEDURE**

5.1    **Driver Delay**

5.1.1    If a driver is experiencing an issue that will delay them, they are to call the Heartland Account Manager immediately. He/she will then determine the nature of the delay, and how long they will be.

5.1.1.1    Current Heartland Account Manager – Tim Vana, Operations Supervisor, Dynamex

5.1.1.2    Contact numbers for Tim Vana:
5.1.1.2.1    Direct connect: 111*358*35 – contact 1st
5.1.1.2.2    Business cell: 312-907-7048 – contact 2nd
5.1.1.2.3    Dynamex phone number 630-350-5351
5.1.1.2.4    Home phone: 847-299-4120 – contact 3rd
5.1.1.2.5    Personal Cell: 847-971-9844 – contact 4th

Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Date: _____

Signature: _____

| Dynamex Work Instruction | Work Instruction No.: |
|---|---|
| Reference: Level II Document Data Control | DEL_Heartland_103 |
| Requirements 7.0 | Revision Issue No: 1.0 |
| Title: Heartland Delivery Driver Breakdown Contingency Plan | Revision Effective Date: 08/24/2012 |
| Page 2 of 3 | |

**5.2**    <u>**Driver Vehicle Breakdown**</u>

5.2.1   If there is a driver vehicle breakdown, the <u>driver</u> is to contact the Dynamex / Heartland Account Manager IMMEDIATELY – REGARDLESS OF THE TIME.

     5.2.1.1   Please refer to 5.1.1.2 for list of contact numbers

5.2.2   The <u>Heartland Account Manager</u> is to contact Heartland to notify them of the delay

     5.2.2.1   Emergency Contact numbers for Heartland:

        *5.2.2.1.1*   CONTACT ATTEMPT #1 FOR AFTER-HOUR EMERGENCIES: Emergency Number for Heartland answered in Toledo, OH – **800-500-6337 x22600# – press # after you enter the extension to speak with on call staff**

        5.2.2.1.2   CONTACT ATTEMPT #2 FOR AFTER-HOUR EMERGENCIES: Emergency Number for Heartland answered in Toledo, OH - **800-500-6337** *Press Option 2 for an Emergency* **– may need to leave a voicemail including your name & phone number to return call for more information**

        5.2.2.1.3   CONTACT ATTEMPT #1 FOR NORMAL BUSINESS HOURS (8AM -1AM) Heartland Pharmacy (in Woodridge, IL) - **800-500-6337** *Press Option 1* **for Pharmacy Services to speak with customer service phone tech**

     5.2.2.2   Please explain to them the nature of the driver vehicle breakdown, and the length of time it will take for the driver to resume their route

5.2.3   The <u>Heartland Account Manager</u> is to contact Dynamex Dispatch to notify them of the delay

     5.2.3.1   Contact numbers for Dynamex Dispatch:
        5.2.3.1.1   **800-350-5300**
        5.2.3.1.2   Direct Connect: **111*358*32**

     5.2.3.2   The <u>Heartland Account Manager and Dynamex Dispatcher</u> will work together to create an action plan to ensure a seamless transition to deliver the Totes, Products and Equipment to the Manor Care facilities in a expeditious manner to prevent patients from NOT receiving their medication and keep medications properly stored

Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Signature: _____       Date: _____

| Dynamex Work Instruction | Work Instruction No.: |
|---|---|
| Reference: Level II Document Data Control Requirements 7.0 Title: Heartland Delivery Driver Breakdown Contingency Plan Page 3 of 3 | DEL_Heartland_103 Revision Issue No: 1.0 Revision Effective Date: 08/24/2012 |

5.2.4    The Heartland Account Manager is to contact each of the affected Manor Care facilities to notify them of the delay, nature of the delay and expected time of arrival for their TPE's

    5.2.4.1    Contact numbers for Manor Care Facilities, **see attached list**

5.2.5    when facilities are contacted by Dynamex after hours regarding delivery delays, a follow up email is expected to my and Debra Smailis attention the next morning detailing what happened, which facilities were called & a documented name and time of call alerting them so that we are aware.

5.2.6    The Heartland Account Manager is to email Heartland Pharmacy of IL Operations Manager (currently Dee Ann Wagley) and Pharmacy Services Supervisor (currently Debra Smailis) to inform them of the contact to the Manor Care facilities in regards to:

5.2.6.1    Nature of the situation
5.2.6.2    Which facilities were contacted
5.2.6.3    Name of person(s) spoken to
5.2.6.4    Date & time of call

    5.2.6.5    Email addresses:
        5.2.6.5.1    Dee Ann Wagley - dwagley@hhstol.com
        5.2.6.5.2    Debra Smailis - dsmailis@hhstol.com


## 5.0    RELATED DOCUMENTATION

| Reference/Form # | Reference/Form Name | Description of Reference/Form |
|---|---|---|
| Appendix A | Manor Care Facility Contact List | Facility phone list |
| | | |
| | | |
| | | |


## APPROVAL SIGNATURES

| | |
|---|---|
| Signature & Title | Date: |
| Signature & Title | Date: |


Document is considered "UNCONTROLLED" unless signed and dated by Site Operations / Quality Management Representative

Signature: _____      Date: _____

# EXHIBIT

# E

| Route | STOPS | ETA |
|---|---|---|
| 101 | Wilmette | 1425 |
| | HIGHLAND PARK | 1501 |
| | LIBERTYVILLE | 1535 |
| | KENOSHA | 1630 |
| | PEWAUKEE | 1800 |
| | HEARTLAND | 2012 |
| 102 | HOMEWOOD | 1358 |
| | SOUTH HOLLAND | 1421 |
| | KANKAKEE | 1519 |
| | PAXTON | 1632 |
| | CHAMPAIGN | 1714 |
| | HEARTLAND | 1948 |
| 103 | PALOS EAST | 1340 |
| | PALOS WEST | 1355 |
| | OAK LAWN EAST | 1417 |
| | OAK LAWN WEST | 1433 |
| | HINSDALE | 1510 |
| | WESTMONT | 1529 |
| | NAPERVILLE | 1618 |
| | HEARTLAND | 1729 |
| 104 | NORTHBROOK | 1357 |
| | ARLINGTON HEIGHTS | 1440 |
| | ROLLING MEADOWS | 1502 |
| | ELK GROVE | 1541 |
| | ELGIN | 1646 |
| | HEARTLAND | 1811 |
| 200A | NORMAL | 0:25 |
| 200B | RIVERVIEW | 0:05 |
| | PEORIA | 1:15 |
| | DECATUR | 2:56 |
| | HEARTLAND | 5:05 |
| 201 | MOLINE | 0:45 |
| | UTICA RIDGE | 1:16 |
| | DAVENPORT | 1:39 |
| | HENRY | 3:37 |
| | HEARTLAND | 6:24 |
| 202 | GALESBURG | 0:52 |
| | MACOMB | 1:12 |
| | CANTON | 2:18 |

|     | NORMAL | 3:23 |
|-----|--------|------|
| 301 | LIBERTYVILLE | 1:56 |
|     | KENOSHA | 2:40 |
|     | PEWAUKEE | 3:46 |
|     | ON DU LAC | 4:51 |
|     | HEARTLAND | 7:29 |
| 302 | HOMEWOOD | 1:52 |
|     | SOUTH HOLLAND | 2:10 |
|     | KANKAKEE | 3:06 |
|     | PAXTON | 4:08 |
|     | CHAMPAIGN | 4:57 |
|     | HEARTLAND | 7:05 |
| 303 | NAPERVILLE | 1:35 |
|     | PALOS EAST | 2:08 |
|     | PALOS WEST | 2:22 |
|     | OAK LAWN EAST | 2:51 |
|     | OAK LAWN WEST | 3:04 |
|     | HINSDALE | 3:40 |
|     | WESTMONT | 3:55 |
|     | HEARTLAND | 4:32 |
| 304 | ELGIN | 1:51 |
|     | ELK GROVE | 2:22 |
|     | ROLLING MEADOWS | 3:01 |
|     | ARLINGTON HEIGHTS | 3:26 |
|     | NORTHBROOK | 4:03 |
|     | HIGHLAND PARK | 4:51 |
|     | WILMETTE | 5:33 |
|     | HEARTLAND | 6:56 |
| 401 | HINSDALE | 20:27 |
|     | WESTMONT | 20:49 |
|     | NAPERVILLE | 21:19 |
|     | HEARTLAND | 21:54 |
| 402 | ELGIN | |
|     | ELK GROVE | |
|     | ARLINGTON | |
|     | ROLLING MEADOWS | |
|     | HEARTLAND | |
| 404 | NORTHBROOK | 20:55 |
|     | LIBERTYVILLE | 21:35 |

|     |                |       |
|-----|----------------|-------|
|     | HIGHLAND PARK  | 21:59 |
|     | WILMETTE       | 22:28 |
|     | HEARTLAND      | 23:25 |
|     |                |       |
| 405 | PALOS EAST     | 20:35 |
|     | PALOS WEST     | 20:48 |
|     | OAKLAWN EAST   | 21:14 |
|     | OAKLWAN WEST   | 21:36 |
|     | HEARTLAND      | 22:04 |
|     |                |       |
| 406 | KANKAKEE       | 21:16 |
|     | CHAMPAIGN      | 22:40 |
|     | PAXTON         | 23:21 |
|     | HEARTLAND      | 1:13  |
|     |                |       |
| 408 | HOMEWOOD       | 20:48 |
|     | SOUTH HOLLAND  | 21:13 |
|     | HEARTLAND      | 21:58 |
|     |                |       |
| 409 | OND DU LAC     | 22:40 |
|     | PEWAUKEE       | 0:05  |
|     | KENOSHA        | 1:10  |
|     | HEARTLAND      | 2:19  |
|     |                |       |
| 500 | DECATUR        | 23:01 |
|     | NORMAL         | 23:59 |
|     | HEARTLAND      | 1:58  |
|     |                |       |
| 501 | RIVERVIEW      | 22:31 |
|     | PEORIA         | 22:57 |
|     | CANTON         | 23:48 |
|     | HEARTLAND      | 2:46  |
|     |                |       |
| 502 | HENRY          | 22:20 |
|     | MACOMB         | 0:37  |
|     | GALESBURG      | 1:48  |
|     | HEARTLAND      | 4:42  |
|     |                |       |
| 504 | UTICA RIDGE    | 22:54 |
|     | DAVENPORT      | 23:16 |
|     | MOLINE         | 23:41 |
|     | HEARTLAND      | 2:19  |

# EXHIBIT

# F



# Heartland Memo

**To:** All Heartland Drivers

**From:** Peter Malinis

**CC:** Dennis Hartnett

**Date:** 3/14/2012

**Re:** HOLIDAY ROUTES

## ATTENTION IC DRIVERS,

In the next few weeks and months, we will be celebrating several holidays. Most of these holidays will fall on either a Sunday or Monday. Either way, these days will run as a SUNDAY ROUTE.

For the Sunday route drivers (the 400 and 500 routes), **you will be required to work these holidays**. As you already know, Heartland is a 24/7 operations, and therefore, we are too. Because of this, you will be expected to delivery your routes on these holidays.

If you want to switch days with another route driver, **you are allowed to do so**. Just as long as the Dispatcher is aware of it and approves.

There is a driver list on the 'Information Board' for you to call and make the switch. It is your responsibility to do this – not the Dispatcher because you are ultimately responsible to cover your route. (I would recommend contacting the 100/200/300 route drivers.)

There is ample time to get your shift covered-if you choose to do so. And you also have the opportunity to celebrate the holidays because the launch is not until 8pm. So it is possible to celebrate the holiday and deliver your assigned route.

Again, I just wanted to reiterate that **you are responsible to cover your route and failure to do so will result in disciplinary action – including up to removal of your route.**

THANK YOU.

Peter Malinis,
Dynamex Operations Supervisor

1

# EXHIBIT

# G

| To: | Current Contractors/Enterprises Servicing Dynamex Customers |
|---|---|
| From: | Dynamex Operations _EAST_, Inc. |
| Re: | New Independent Contractor Agreement |
| Importance: | High |
| Date: | _10/18/2013_ |

The purpose of this memo is to notify you that Dynamex Operations _EAST_, Inc. ("the Company") desires to enter into a new Independent Contractor Agreement ("Agreement") with you. The proposed new Agreement is included in this packet for your review and consideration. The Agreement is an important legal document that creates contractual rights and obligations for both parties, so **please make sure you understand and agree to all of the terms before signing it**.

## I.    GENERAL INSTRUCTIONS

This memo explains some of the important clarifications and changes made in the new Agreement, but as a business owner, you are ultimately responsible for taking the actions necessary to understand the proposed terms.   You are also responsible for initiating any negotiation of the Agreement's terms if you wish to do so.  However you choose to proceed, **we ask that you respond to the Company within 10 days of receipt of this memo** by (1) returning a fully executed copy of the Agreement, OR (2) by contacting the Company to initiate negotiation of the contract terms.  If you decide to sign and return the Agreement, you should mail a fully executed copy of the Agreement along with all related documentation to the Company using the self-addressed envelope included in this packet.  As a separate business, you should also make a copy of the Agreement for your records.

When reviewing the Agreement, please pay special attention to those sections where a signature or other information must be inserted.  To help identify these sections, the Agreement has been shaded wherever information must be added.  If you have any questions regarding the Agreement or what information to insert, you should contact the Operations Manager responsible for the area in which your business operates.

## II.   IMPORTANT CLARIFICATIONS AND CHANGES TO AGREEMENT

Like the current agreement between you and the Company, the new Agreement memorializes the parties' intent to create an independent contractor relationship, not an employment relationship.  The Agreement gives you the opportunity to perform transportation and delivery services (or "Engagements") for the Company's customers, while also allowing you to retain the right to operate your business free from control by the Company or the customers you service.  As always, you are also free to negotiate the terms of the Agreement, including the amount of the fees you charge for transportation services.

There are a few important clarifications and changes in the new Agreement that we'd

specifically like to bring to your attention.

Security Outerwear:  The new Agreement clarifies the contractual terms relating to contractor appearance while on a customer's premises.  As you know, for security reasons some customers require that contractors display ID badges or wear certain apparel identifying them as being contracted through the Company in order to access the customer's locations.  The new Agreement clarifies the situation by expressly stating that contractors have no contractual obligation to wear such apparel or an ID badge unless the customer being serviced has specifically implemented a security requirement of this kind.  In such cases, the security requirement will be separately identified in advance so that it can be taken into account when you negotiate the amount you will charge to service the customer.  Moreover, even when you agree to service a customer with a security requirement of this kind, your driver only needs to wear the apparel or ID badge while on the customer's premises.

Another, **very significant change** to the Agreement is the modification to the Dispute Resolution (or Arbitration) Provision, which requires most types of disputes between you and the Company to be resolved through arbitration (disputes that can be resolved in small claims court are specifically excluded).  The Company is proposing to add this arbitration provision because it believes that disputes can be resolved in arbitration more quickly and less expensively than if they are brought in court.  If you prefer to bring all of your disputes before a court, you can choose not to agree to the Arbitration Provision in the new Agreement by notifying the Company of your intent to "opt out" of the Provision within **30 days** of signing the Agreement, as described further below.  **Because entering into the new Agreement – and the Arbitration Provision in particular – will affect your legal rights, the Company strongly recommends that you read this memo, the Agreement, and the Arbitration Provision, very carefully**.

**What is arbitration?**  The Company hopes that any dispute that might arise between you and it will be resolved informally.  However, if that does not happen, the Arbitration Provision requires both sides to submit the dispute to "arbitration" instead of filing a lawsuit in court.  This means that you and the Company would pick a neutral, independent person, called an "arbitrator," who would make a determination after listening to the evidence presented by each side.  The arbitrator can award any form of individual relief available in court.  The Company believes the reason disputes can be resolved more quickly, and less expensively, in arbitration than in court is because the arbitration proceeding would be less formal and limited to individual claims.  Arbitrators are also not subject to the backlog of cases facing many courts, so an arbitrator can often issue a decision faster than a court.

**What cannot be arbitrated?**  While the Arbitration Provision provides that you can arbitrate the same claims on behalf of yourself as you can in court, **it does *not* allow you to bring claims on behalf of *others*, such as a "class" of individuals.**  The U.S. Supreme Court recently observed that if class claims were brought in arbitration, the advantages of arbitration would be lost, making arbitration as slow and as costly as court proceedings, where claims brought as class actions frequently take years to resolve, often with little benefit to the class members.  In addition, the Arbitration Provision excludes disputes that may be resolved in small claims court.

2

**What if I do not want to arbitrate?** You have **30 days** from the date that you sign the Agreement to opt out of the Arbitration Provision. **You may do so as described in the Agreement.** You will not suffer any consequence or retaliation for opting out of the Arbitration Provision. If you opt out within the **30-day** period, you will not be required to arbitrate disputes between you and the Company. However, **if you do not opt out within this period, or if you do nothing, the Arbitration Provision will become binding on you and the Company 30 days after you have signed the new Agreement.** After that, you must arbitrate any dispute with the Company that cannot be resolved informally or in small claims court.

**How will the Arbitration Provision affect my rights?** The Arbitration Provision provides that you and the Company each waive the right to file a lawsuit in court against one another (except small claims), and that any claim that is arbitrated must be done on behalf of you alone, and not on behalf of a class. This includes disputes that arose prior to entering into the new Agreement and the Arbitration Provision.

**May I consult an attorney?** The Company believes the Arbitration Provision will benefit everyone. Nevertheless, the decision whether to agree to the Arbitration Provision is yours to make. The decision to arbitrate claims instead of having them heard in court is a significant one, as is the decision to forfeit your right to participate in a class action in favor of arbitrating individual disputes. The Company therefore wants to make clear that you have the right to consult an attorney of your choice to discuss the Arbitration Provision. If instead you'd like to speak to one of the Company's representatives regarding the Arbitration Provision or the Agreement generally, please feel free to contact email the Region Vice President (_____*PAUL JASKO*_____) at _____*PAUL.JASKO* @Dynamex.com.

3

# EXHIBIT

# H

# Illinois State Law Appendix
## Independent Contractor Agreement

## OPERATIONS REGULATED BY ILLINOIS LAW

This Appendix to the Independent Contractor Agreement ("Agreement") shall apply to any transportation services CONTRACTOR performs pursuant to the Agreement that are subject to the laws of the state of Illinois, as referenced or described below. To the extent that any contractual or legal requirement imposed by this Appendix exceeds that set forth in the Agreement, the heightened standard set forth in this Appendix shall apply.

Subject to the foregoing, and to the extent CONTRACTOR and/or its services are subject to the following state law requirements, CONTRACTOR agrees to:

(1)     register with the Illinois Commerce Commission and maintain a Public Carrier Certificate;

(2)     if performing services on an interstate basis, comply with all applicable provisions of the Unified Carrier Registration ("UCR") program, as provided for in 49 U.S.C. Section 14504a; and

(3)     meet or exceed the minimum coverage standards for insurance required under Illinois and federal law.

THIS APPENDIX is agreed to by the undersigned parties as of the latest date set forth below.

**COMPANY**

Dated: _____, 20_____

Signature: _____

Name: _____

**CONTRACTOR**

Dated: _____, 20_____

Signature: _____

Name: _____

## INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES (2013)

THIS INDEPENDENT CONTRACTOR AGREEMENT FOR TRANSPORTATION SERVICES ("AGREEMENT") entered into as of the _____ day of _____, 20___ (the "Effective Date"), by and between _____ with its principal office located at _____ (the "Contractor") and Dynamex Operations _____, Inc., a Delaware corporation ("Dynamex").

WITNESSETH:

WHEREAS, Dynamex is a duly licensed common carrier, contract carrier, freight forwarder, and freight broker pursuant to various operating authorities issued by the United States Department of Transportation ("DOT") and similar state agencies regulating intrastate carriers; and

WHEREAS, Dynamex is engaged in the separate businesses of providing, brokering and arranging ground transportation services with respect to general commodities, freight, documents and general merchandise, among other things (hereinafter referred to as "Packages"), throughout the United States; and

WHEREAS, in connection with these business lines, Dynamex contracts to motor carriers and other independent transportation providers transportation services involving the movement of Packages that Dynamex brokers and/or arranges on behalf of the customer for which the service is to be performed; and

WHEREAS, Contractor is a fully licensed motor carrier and/or authorized independent transportation provider engaged in the business of providing commercial transportation services, and lawfully in possession of the equipment (including motor vehicle(s), equipment, and accessories) and personnel necessary to perform commercial transportation services in compliance with all applicable laws and regulations; and

WHEREAS, Contractor desires to enter into this Agreement for the right to receive offers to perform contracted transportation services Dynamex brokers and/or arranges on behalf of customers, which, as an independent contractor/enterprise, Contractor shall be free to accept or decline.

NOW, THEREFORE, in consideration of the above assertions and the mutual promises below, it is mutually agreed between the parties as follows:

1.      **PURPOSE OF AGREEMENT**: This Agreement governs the relationship between Dynamex and Contractor, and serves as the master contract setting forth the terms applicable to all services and equipment Contractor agrees to provide in the performance of transportation services brokered or subcontracted by Dynamex, including, but not limited to the services described below and those memorialized in the attached Addendum A (collectively "the Contracted Services"). This includes services Dynamex brokers to Contractor for performance under Contractor's operating authority, as well as subcontracted services to be performed under Dynamex's operating authority pursuant to United States Department of Transportation ("DOT") regulations at 49 CFR Part 376 ("Leasing Regulations"). Unless otherwise agreed in writing, nothing in this Agreement shall guarantee Contractor any particular volume of business or service for any particular time period. Neither shall this Agreement obligate Contractor to accept or perform any contract engagement or service opportunity offered by Dynamex pursuant to this Agreement.

2.      **RELATIONSHIP OF PARTIES (INDEPENDENT CONTRACTOR)**:      This Agreement is between two co-equal, independent business enterprises that are separately owned and operated. By entering into this Agreement, the parties intend to establish a relationship of principal/independent contractor, not employer/employee, for all purposes. As such, Contractor shall be responsible for determining how to perform the Contracted Services, including the specific manner and means by which Contractor accomplishes the end result desired by the customer. Dynamex shall have no right to, and shall not, control the manner or prescribe the method by which contractor performs the Contracted Services. Neither Dynamex nor Contractor shall be considered the agent, servant, employee, partner or co-venturer of the other for any purpose, and neither party shall have the right to contractually bind the other without its express written agreement. Neither Contractor nor Contractor's officers, directors, agents, subcontractors, indirect drivers, employees, helpers or servants ("Contractor's Personnel") shall be considered employees of Dynamex or its customer for any purpose. Nor shall Contractor or Contractor's Personnel be eligible to participate in any welfare plan or receive any other benefit, if any, available to Dynamex's or its customer's employees, agents, or subcontractors. (This exclusion/ineligibility shall apply

to Contractor and Contractor's Personnel even if legally found to be an employee of Dynamex and/or its customer by a court or agency of competent jurisdiction.)

**3. TERM OF AGREEMENT:** This Agreement shall commence as of the Effective Date and shall continue in effect until terminated in accordance with the terms of Section 12 of this Agreement.

**4. CONTRACTED SERVICES:** In addition to any services specifically described in Addendum A, the Contracted Services shall include all transportation service opportunities Dynamex may, from time to time, offer to Contractor. If not already known by Contractor, when Dynamex offers a service opportunity to Contractor, Dynamex shall advise Contractor of the customer's parameters defining the Contracted Service to be performed, which shall generally include the pickup/delivery location(s), Package count and weight, and pickup/delivery window(s) (as well as other customer specifications unique to the Contracted Service) ("Service Parameters"). Contractor shall have the right to decline or accept any such offer. Once accepted, however, Contractor shall be contractually bound to perform the service in accordance with the Service Parameters. All matters relating to the manner and means of performance, however, shall remain within Contractor's exclusive discretion and control, including, but not limited to, the priority assigned the service, selection of the equipment and personnel used to perform the service, routing and ordering of the service, management/supervision of the personnel performing the service (to the extent deemed necessary by Contractor or required by law), and manner of invoicing for the service (subject to the legal requirements regarding Proof of Delivery documentation set forth below).

(a) <u>Full Performance</u>: Contractor agrees to devote its best efforts to the performance of the Contracted Services. Generally, full performance shall include: (1) pickup and taking of lawful custody of all Packages included in the shipment from the shipper; (2) safe transport of the Packages to the specified delivery location(s) in accordance with all applicable laws; (3) timely delivery and transfer of lawful possession of the Packages (without damage or loss) to the appropriate shipper/consignee; (4) timely submission of all information and documentation required by law and/or specified by the Customer for Proof of Delivery and chain of custody; and (5) timely return and transfer of lawful custody of any undeliverable cargo to the shipper and/or customer.

(b) <u>Contractor's Availability</u>: With the exception of any specific arrangement agreed upon in Addendum A, Contractor shall determine, in its sole discretion, whether and when to provide services and/or equipment pursuant to this Agreement. Contractor has no obligation to be 'on-call' to receive service offers for any particular time period, and shall not be eligible for any on-call payments from Dynamex. When declining an offer to perform Contracted Services, Contractor shall not be required to provide any justification for its refusal, nor suffer any penalty for the refusal.

(c) <u>Concurrent Services</u>: As an independent contractor/enterprise, the parties understand that Contractor offers its services equally to other companies (contract carrier) and/or to the public generally (common carrier), in a manner consistent with the other provisions of this Agreement. With the exception of exclusive use arrangements governed by the DOT Leasing Regulations and as may be agreed to by Contractor in its discretion, Contractor shall be free to perform concurrent delivery services for companies other than Dynamex, and to commingle cargo to the extent allowed by law.

**5. CONTRACTOR'S SERVICE FEES**

(a) <u>Service Fees</u>: As full and complete payment for Contractor's performance of the Contracted Services, Dynamex shall pay Contractor's service fees, as agreed upon and specified in Addendum A, which fees have been negotiated and agreed upon by the parties in connection with the Contractor's bid/proposal (attached and incorporated into Addendum A). The term "Net Revenue" as used in this Agreement shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc.) and bad debt. Dynamex and Contractor shall each have the right to request changes and/or renegotiation of the provisions of Addendum A, which may only be modified by written agreement signed by both parties. Dynamex will not be liable to Contractor for any settlement or loss associated with suspension of services due to acts of God, war, civil disturbance, acts of terrorism, acts or demands of any government or governmental agency, labor disturbances, fires, floods or other casualty, severe weather, or customer suspension or termination of service. Contractor understands and agrees that from time to time circumstances such as traffic or shipment relay delays, adverse weather, and other potentially cost increasing circumstances will occur and Contractor will not be guaranteed any additional payment from Dynamex for such occurrences. Contractor shall be free to request additional compensation due to extenuating circumstances, and Contractor and Dynamex may negotiate for additional compensation subject to mutual agreement. Contractor hereby acknowledges that financial gain or loss may be recognized by Contractor while performing transportation services under this Agreement.

(b) <u>Incomplete Paperwork</u>: If, after payment is made, Dynamex discovers that Contractor failed to submit all required documentation, or submitted incomplete or inaccurate documentation, Dynamex shall have the right to charge back the amount of the improperly invoiced fee from any amounts owed to Contractor, including future service fees, and Contractor hereby authorizes such charge back. To recover such a payment, Dynamex must notify Contractor of the error within thirty (30) calendar days of the date on which the payment was made. If notice of the error is not made within the thirty (30) day period, it shall be deemed untimely and Dynamex's right to recover the payment shall be waived.

(c) <u>Payment Disputes</u>: Payment by Dynamex to Contractor under the terms of this Agreement shall be deemed complete and accurate unless written notice disputing the amount of payment is provided by Contractor to Dynamex within fourteen (14) days of Contractor's receipt of the settlement check containing the disputed payment. In the absence of such timely notice by Contractor, the settlement payment shall be conclusively presumed to be correct and final. Once final, Contractor may only dispute a payment if its inaccuracy could not have been discovered within the fourteen (14) day dispute period, and a written notice of dispute is submitted within fourteen (14) days of the date the inaccuracy could first have been discovered.

(d) <u>Final Payment</u>: Unless otherwise mandated by law, upon termination of this Agreement, Dynamex shall have the right to withhold final payment of all service fees owed under this Agreement for a maximum of thirty (30) days in order to allow Dynamex sufficient time to account for, calculate and provide a complete reconciliation of the amount of Contractor's final settlement given any deductions, charge backs or offsets permitted by law or the terms of this Agreement.

(e) <u>Service Failure</u>: In the event Contractor fails to fully perform a Contracted Service it is contractually bound to perform (hereinafter a "service failure"), and the service failure is due to Contractor's action or omission, Contractor shall forfeit the related service fee. In the event advance notice of the service failure is possible, but not provided by Contractor, Contractor may additionally be charged liquidated damages in an amount of 1.5 times the amount of the original service fee to cover the cost of arranging alternative transportation service. To the extent practicable, Contractor shall be given an opportunity to cure any service failure prior to Dynamex arranging alternative transportation service. The parties acknowledge that liquidated damages are appropriate because actual damages are not reasonably ascertainable. Contractor agrees that such liquidated damages may be deducted from any services fees, settlement amount or other amounts due to Contractor.

6. CONTRACTOR'S BUSINESS

(a) <u>Business Licenses and Operating Authorities</u>. Contractor warrants and represents that it is an independently established enterprise (either a corporation, partnership, limited liability company, unincorporated business association, or sole proprietorship) in the business of providing commercial transportation services under the business name identified above in accordance with all applicable federal, state and local laws, including the requirement under the Internal Revenue Service ("IRS") regulations to obtain a Federal Employer Identification Number ("FEIN #"), if applicable. Contractor further warrants and represents that it possesses and shall maintain at all times during the Term of this Agreement any and all motor carrier operating authorities, permits, or licenses of any nature required by the DOT or the laws of any jurisdiction in which it operates required to perform the Contracted Services (hereafter collectively "Operating Authorities"). To verify compliance with this Section, Contractor shall furnish to Dynamex copies of all Operating Authorities prior to performing any services pursuant to this Agreement, or as may otherwise be required by law. To ensure continuing compliance, Dynamex shall, upon request with reasonable notice, be entitled to review copies of Contractor's Operating Authorities from time to time, or as required by law.

(b) <u>Contractor's Personnel</u>: As an independent contractor/enterprise, Contractor shall be solely responsible for determining how to perform the Contracted Services and need not perform any services personally, but may hire or engage others (as employees and/or subcontractors) to perform all or some of the Contracted Services (subject to all legal limitations).

(i) Contractor shall furnish at its own discretion, selection, and expense any and all Personnel required, necessary or incidental to Contractor's performance of the Contracted Services. Contractor assumes full and sole responsibility for the payment of all amounts due to its Personnel for work performed in relation to this Agreement, including all wages, benefits and expenses, if any, and for all required state and federal income tax withholdings, unemployment insurance contributions, and social security taxes as to Contractor and all Personnel employed by Contractor in the performance of services under this Agreement, and Contractor shall further be responsible for meeting and fulfilling the requirements of all regulations now or hereafter prescribed by legally constituted authority with respect thereto. Unless mandated by law, Dynamex shall have no authority to withhold state or federal income taxes, social security taxes, unemployment insurance taxes/contributions, or any other local, state or federal tax on behalf of Contractor or its Personnel. Contractor indemnifies and agrees to hold harmless Dynamex and its officers, directors, equity

holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or related to Contractor's payment, nonpayment or underpayment of Contractor's Personnel, including for any taxes, fines, assessments, payments, or fees (including penalties and interest thereon) for Contractor or Contractor's Personnel.

(ii)  Contractor shall be solely responsible for the direction and control of the Personnel it uses to perform all Contracted Services, and Contractor certifies that all Personnel and Equipment it utilizes to perform the Contracted Services shall meet all industry and regulatory standards and qualifications, including the rules and regulations of the FHA, DOT, FMCSA and any other regulatory body having jurisdiction.  Contractor further certifies that it has and will continue to comply with any and all federal, state and local laws and regulations requiring Contractor to perform background checks and drug and alcohol screening of any Personnel used to perform services under this Agreement.  Contractor agrees that all drivers provided will comply with the Compliance, Safety, Accountability (CSA) (formerly CSA 2010) standards and further agrees to notify Dynamex immediately if Contractor receives any Alert Level Status on the CSA Safety Management System (SMS).  Failure to adhere to the CSA standards, using a driver to perform Contracted Services who fails to meet all legal and regulatory requirements, or whose record does not comply with the Dynamex DVER-CSA policy and metrics shall be a material breach of this Agreement.

(iii)  To ensure compliance with all driver safety standards imposed by federal, state and local law (including the rules and regulations of the FHA, DOT, FMCSA and any similar state regulatory body), and Customer safety expectations and specifications, Contractor agrees to conduct background checks, including motor vehicle reports, and drug and alcohol screening of all drivers Contractor uses to perform services for a Customer under this Agreement, and further agrees to provide proof of such to Dynamex.  Alternatively, Contractor authorizes Dynamex to arrange for such background checks and drug and alcohol screening to be performed by a vendor of Dynamex's choosing.  Contractor shall be responsible for all costs associated with any background check and drug and alcohol screening of Contractor's Personnel, even if arranged by Dynamex.  Upon request, Contractor shall make available for inspection its records demonstrating compliance with the foregoing requirements.  Upon execution of this Agreement, Contractor shall deliver to Dynamex any and all documentation relating to Contractor's Personnel that it is required to submit to Dynamex under the rules and regulations of the appropriate regulatory agencies.

(iv)  Contractor's Personnel shall be expected to maintain a professional appearance consistent with the standards in the commercial delivery industry while on the customer's or consignee's premises where services are performed.  Contractor further agrees to comply with the security identification requirements specified by the customers serviced by Contractor (such as the need to carry or display an identification badge or wear apparel bearing the customer's or Dynamex's name, logo or colors).

(v)  In the event Contractor utilizes the services of a subcontractor to perform the Contracted Services, Contractor's subcontractor must satisfy and comply with all of the terms of this Agreement, which Contractor must make enforceable by written agreement between Contractor and the subcontractor, a copy of which must be provided to Dynamex at its request.  The parties acknowledge that the sole purpose of this requirement is to ensure Contractor's compliance with the terms of this Agreement and the laws governing the subcontracting of transportation services.

(c)  Contractor's Income and Payroll Taxes.  (a) The relationship of Contractor with Dynamex hereunder being that of an independent contractor, the parties fully understand that neither federal, state, nor local income taxes nor payroll taxes of any kind, including but not limited to F.I.C.A. or F.U.T.A., will be withheld or paid by Dynamex on behalf of Contractor.  Contractor agrees (i) to pay all self-employment and other applicable taxes, including, but not limited to, sales taxes, payroll taxes of any kind, income taxes, social security taxes, unemployment insurance, state disability insurance and estimates thereof, and all workers compensation insurance payments as may be required under the laws, rules or regulations of any governmental agency having jurisdiction over Contractor; (ii) to maintain sufficient records to enable Dynamex to determine that Contractor has satisfied its obligation to pay such taxes and other payments, and (iii) to properly withhold and pay all local, state and federal income taxes on behalf of Contractor and Contractor's Personnel, to the extent required by law.  Contractor acknowledges that the social security tax Contractor must pay is higher than the social security tax Contractor would pay if Contractor were an employee.

(d)  No Unemployment Compensation.  Contractor hereby acknowledges its understanding that Dynamex is not an employer of Contractor or Contractor's Personnel within the meaning of the unemployment insurance/unemployment compensation laws of any state in which Contractor performs services and, therefore, Contractor shall not be entitled to unemployment benefits or contributions in relation to its performance of the Contracted Services.

(e)  Indemnity.  Contractor agrees to indemnify, defend, and hold Dynamex harmless from all claims arising out of or related to Contractor's representation to Dynamex that it was an independent contractor, including any attorney's fees and costs incurred in the defense of any unsuccessful action or claim Contractor brings against Dynamex premised on Contractor's contention

that it performed the Contracted Services in an employment, not independent contractor, capacity.

7. **CONTRACTOR'S EQUIPMENT**

(a) <u>Vehicles and Transportation "Equipment"</u>: Contractor warrants that it in the performance of its services hereunder, Contractor shall only use lawfully registered, licensed and permitted vehicles, trailers, and other transportation related equipment ("Equipment") that meet all regulatory and industry standards, as well as any safety standards specified by the customer being serviced. Contractor shall direct, in all respects, the operation and maintenance of the equipment used in performance of this Agreement, which direction shall include, but not be limited to, selection of indirect drivers, helpers, places of repair, stopping, parking, replacement, maintenance and purchases of fuel, equipment, insurance (subject to Section 8 following), parts and accessories. Addendum B shall identify the vehicle(s) allocated by Contractor to perform services under this Agreement. Contractor recognizes the importance of vehicle appearance and cleanliness in the commercial transportation industry and, therefore, agrees that all Equipment shall be in a clean condition consistent with generally accepted industry standards whenever used to perform services under this Agreement. Contractor is responsible for all costs and expenses arising from Contractor's performance of services under this Agreement, including, but not limited to, costs related to Contractor's personnel and Equipment. Except as otherwise required by law, Contractor assumes all risk of damage or loss to its Equipment.

(b) <u>Other Equipment</u>: In addition to the Equipment, Contractor agrees that it will provide all tools necessary for providing services under this Agreement. Contractor shall furnish and maintain, at its own cost and expense, shipment handling equipment, radios, cellular telephones, beepers, scanners, and any other type of equipment Contractor chooses to utilize. Contractor shall provide a commercial scanner or other communication device compatible with Dynamex's proprietary technology to allow Contractor to handle and track shipments according to the customers' package tracking requirements. Contractor may provide its own scanner or may elect to lease such equipment from Dynamex for fair market value under the terms and conditions set forth in Addendum D attached hereto.

(c) <u>DOT Equipment Lease</u>: If required under applicable DOT regulations, Contractor and Dynamex shall enter into a Vehicle Lease Agreement (contained in Addendum B), whereby Contractor (Lessor) shall lease the designated Equipment to Dynamex (Lessee) for the period specified therein.

(d) <u>DOT Regulation:</u> Contractor acknowledges that under certain DOT regulations and guidelines, Contractor may be operating pursuant to the authority granted Dynamex. In such event, Contractor agrees to comply with Addendum E, and in addition, Contractor agrees to provide to Dynamex all items required under the applicable DOT regulations, including, without limitation, hours of service logs, toll receipts, and fuel receipts (within 13 days of completion of the logs). Contractor shall further provide inspection reports to Dynamex within 24 hours of any inspection, provided Contractor shall not sign or return such inspection reports to the FMCSA prior to submitting such reports to Dynamex. Upon receipt, Dynamex shall sign and return such reports to the FMCSA in accordance with applicable regulations. Contractor agrees, whether operating pursuant to Dynamex's DOT authority or its own authority, to create, maintain and make available to Dynamex or any government agency having jurisdiction over Contractor, documents required for DOT compliance, including but not limited to, driver qualification files, vehicle inspection reports, vehicle maintenance and repair reports, daily driver's logs, hours of service, and vehicle condition reports. Contractor further agrees to maintain its own IFTA documents and IRP tags as required by law regardless of whether Contractor is operating under its own or Dynamex's DOT authority. Contractor grants Dynamex the right to periodically inspect Contractor's equipment and records for the sole purpose of observing compliance with such regulations and guidelines. As specified in the Leasing Regulations at 49 CFR Part 376.12(c)(4), the parties acknowledge that to the extent the DOT regulations and guidelines require Dynamex to verify the status of Contractor's equipment and/or records, these actions are mandated by law and do not constitute an exercise of control by Dynamex over Contractor's business or its performance of the Contracted Services. Consequently, such actions do not alter Contractor's status as an independent contractor. If Carrier is operating under its own operating authority, Carrier shall render such transportation services as a motor carrier under USDOT #_____ /MC# _____and/or State authority #_____, and shall provide contract carriage as an authorized carrier pursuant to Federal and/or State Statutes and Regulations.

(e) <u>Costs and Expenses</u>. Contractor agrees to be responsible for all costs and expenses incident to the ownership/rental and operation of all Equipment used by it in the performance of its services hereunder, including, but not limited to, rental fees, registration fees, license fees, inspection fees, insurance, tolls, fines, penalties, maintenance and repair expenses, payment of its purchase price, lease, or personal property or sales taxes and fuel, oil and tire expenses.

(f) <u>Security Identification/Signage</u>. Many customers require delivery personnel entering their premises to

display some form of security identification or signage for the purpose of identifying the individual as a professional delivery provider. The specific nature of the security identification required may differ by customer, but may include displaying signage on Contractor's delivery vehicle or the carrying and/or displaying of a security identification badge by Contractor's Personnel (while on the customer's premises). To the extent required by the customers Contractor chooses to service under this Agreement, Contractor agrees to comply with the customers' security identification requirements, and further agrees to obtain and pay the cost for all appropriate and customer-required security signage for the Equipment. Contractor agrees that it has the sole responsibility and shall bear the cost and expense of painting, obtaining, affixing, and removing such signage.

(g)     Brand Promotion: If Dynamex makes available, and Contractor chooses to participate in a brand promotion and marketing program, whereby Contractor is paid a brand promotion fee in exchange for displaying signage and/or other branding elements on Contractor's Equipment, the parties acknowledge that Contractor's participation in such program shall be strictly voluntary. In the event the parties enter into a brand promotion/marketing arrangement of this kind, the specific terms of the arrangement shall be set forth in a separate agreement or Addendum to this Agreement.

8.     INSURANCE

(a)     Commercial General Liability. If Contractor uses Personnel in performance of the Contracted Services, Contractor shall obtain and maintain in effect during the term of this Agreement commercial general liability insurance on an occurrence form providing coverage for legal liability for bodily injury, property damage and personal injury, including defense costs, broad form property damage, broad form contractual liability, employees and independent contractors as additional insureds, cross liability and severable liability clause for any and all losses arising out of or connected with Contractor's operations. Coverage limits shall be at least $1,000,000 per occurrence.

(b)     Commercial Auto Liability. Contractor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability insurance covering Bodily Injury and Property Damage, with a limit of liability not less than $300,000 Combined Single Limit Commercial for vehicles with a gross manufacturer's vehicle weight of 10,000 pounds or less, (ii) $1,000,000 Combined Single Limit for vehicles with a gross manufacturer's weight of 10,001 pounds or greater regardless whether operating under Contractor's or Dynamex's DOT operating authority. Each such policy of insurance (and related Certificate of Insurance) shall name Dynamex as an Additional Insured. If Contractor uses more than one vehicle to perform the Contracted Services, coverage must apply to all other owned or hired and non-owned vehicles. Contractor agrees to provide Dynamex with a customary Certificate of Insurance as evidence of such insurance. Each such insurance policy obtained by Contractor shall require the insurer to provide Dynamex with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Contractor agrees to immediately notify Dynamex of any changes in coverage, expiration, termination or cancellation of such insurance. All such insurance maintained by Contractor shall provide that insurance, as it applies to Dynamex, shall be primary and Dynamex's insurance shall be noncontributing notwithstanding any insurance Dynamex maintains.

(c)     "On Dispatch" Insurance. Contractor may elect, at Contractor's option, to purchase "on dispatch" liability insurance through an insurance carrier made available by Dynamex, which insurance can be purchased to insure certain types of vehicles during the time used to perform transportation services brokered and/or subcontracted by Dynamex.

(d)     Worker's Compensation Insurance/Occupational Accident Insurance. Contractor, at its own expense, agrees to keep in full force and effect during the term of this Agreement either: Worker's Compensation Insurance covering Statutory Benefits and Employers Liability with a limit of liability of not less than $100,000 per accident, $500,000 policy limit, $100,000 per employee; or Occupational Accident Insurance (OccAcc) with a minimum aggregate limit of liability of $1,000,000 from a company as set forth in Section (e). Contractor shall indicate its election in regard to the foregoing on Addendum C attached hereto. Contractor agrees to provide Dynamex with a customary Certificate of Insurance as evidence of Worker's Compensation and Employers Liability Insurance or OccAcc Insurance. Each insurance policy obtained by Contractor shall require the insurer to provide Dynamex with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Contractor agrees to immediately notify Dynamex of any expiration, termination or cancellation of such insurance. Contractor may, at Contractor's option, purchase OccAcc insurance from any source, including carrier(s) that offer such coverage to other Contractors doing business with Dynamex, subject to processing procedures made available by that carrier through Dynamex. Contractor agrees to assume the liability for the payment of any Worker's Compensation premiums, claims, and/or benefits arising out of the conduct of Contractor's business, and to indemnify Dynamex and its officers, directors, members, managers, and board of managers for any issues, disputes, or benefits associated with the same.

(e)     Legal Cooperation. Contractor agrees, without qualification, to cooperate with and assist Dynamex and its

chosen attorneys in the defense of lawsuits against Dynamex or its insurers, arising out of events which occur in the course of Contractor's business activities. Dynamex agrees to reimburse Contractor for reasonable and necessary out of pocket expenses incurred while assisting in the defense of such lawsuits.

(f) <u>Insurance Companies</u>. Contractor agrees to procure insurance from an insurance company having a rating of "A-" or better by A.M. Best.

(g) <u>Supplemental "On Dispatch" Insurance</u>. At Contractor's option, by signing and dating the Authorization immediately below, Contractor may authorize the purchase of supplemental "on dispatch" insurance coverage for all vehicles used to perform services pursuant to this Agreement. If authorized below, supplemental "on dispatch" liability insurance will be automatically purchased in single week or 2-week increments for any week or weeks in which Contractor's liability insurance lapses or otherwise fails to satisfy the requirements set forth in Section 8(b) above. Contractor's purchase of supplemental "on dispatch" insurance in such instances shall satisfy the requirements of Section 8(b) and, therefore, the failure triggering Contractor's purchase of the supplemental "on dispatch" insurance shall not alone constitute a material breach of this Agreement.

| Authorization for Purchase of Supplemental "On Dispatch" Insurance | |
|---|---|
| I hereby authorize the purchase of supplemental "on dispatch" insurance coverage for each week or 2-week period in which my liability insurance fails to satisfy all requirements of Section 8(b) for each vehicle used to perform services pursuant to this Agreement during the same week. | _____<br>Contractor's Signature<br><br>Date: _____10/31/2014_____ |

(h) <u>Insurance Purchased Through Dynamex</u>. Contractor understands and hereby acknowledges that it is free to purchase any and all insurance policies required under this Agreement from the insurance carrier and/or broker of its choice, and that if Contractor elects to purchase any form of insurance from an insurance carrier made available by Dynamex's insurance broker, it does so voluntarily and for its own business reasons, and hereby authorizes and directs Dynamex to deduct the cost of such insurance premiums from the settlement payments owed to Contractor for the services performed pursuant to this Agreement.

9. **INDEMNIFICATION:** Dynamex agrees to indemnify, defend, and hold harmless Contractor from and against any and all claims or suits for injury, death or property damage by any third party against Contractor resulting from Dynamex's breach of this Agreement or Dynamex's intentional or negligent or willful acts or omissions, and/or those of Dynamex's agents or employees. Contractor agrees to indemnify, defend and hold harmless Dynamex and its parent, subsidiary and related companies and their employees, officers, directors, managers, members, and board of managers from and against any and all claims or suits for injury to or death of Contractor, its agents, representatives, assistants, employees and/or sub-contractors or loss of or damage to their property and from and against any and all other claims or suits for injury or death to person or loss of or damage to property of Dynamex or Dynamex's customers, agents, members, employees or any third party, resulting from Contractor's breach of this Agreement or Contractor's intentional or negligent acts or omissions, and/or those of its agents, representatives, assistants, employees, Contract Support Personnel, and/or sub-contractors. Dynamex shall have the right to set off and deduct from any and all amounts owing from Dynamex to Contractor the full value of any damage, loss or liability incurred by Dynamex or any third party arising out of any negligent or intentional act or omission by Contractor or its agents, representatives, assistants, employees or subcontractors.

10. **CONTRACTOR'S LIABILITY FOR CARGO/PACKAGES:** Contractor, at its expense, agrees to carry and keep in full force and effect for the duration of this Agreement, Motor Truck Cargo and/or Financial Cargo Liability insurance in an amount not less than $10,000.00 per occurrence with a deductible not to exceed $100.00 per occurrence for the handling of general freight, $25,000 per occurrence with a deductible not to exceed $100.00 for the handling of pharmaceutical freight and $50,000 per occurrence with a deductible not to exceed $100.00 for the handling of retail freight, covering loss or damage to the Packages which are in or subject to the care, custody and control of Contractor. The requirement in the previous sentence shall not apply in the event that the Contractor operates a single vehicle of 10,000 lbs or less and does not use subcontractors or employees in fulfilling Contractor's services under this Agreement. Contractor shall provide Dynamex with a customary Certificate of Insurance as evidence of such insurance and deductible. Each such insurance policy obtained by Contractor shall require the insurer to provide Dynamex with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Contractor shall be liable to Dynamex for loss or damage to Packages shipped under this Agreement whether or not the loss is covered by the insurance. Packages picked up by Contractor shall be deemed to be in the care, custody, possession, and control of Contractor until the same shall have been delivered to, and accepted by, the designated consignee, recipient, or its authorized agent.

Contractor's care, custody, possession or control, Contractor shall notify the shipper and/or Dynamex of the damage or loss as soon as practicable after damage or loss occurs. It is Contractor's responsibility to complete accepted transportation services and make any corrections with respect to customer expectations. If it should become necessary for Dynamex to intervene due to Contractor's inability or refusal to complete services accepted by Contractor, Dynamex reserves the right, upon notice, to setoff unavoidable costs against any settlement payments due Contractor. Contractor agrees to cooperate with Dynamex and/or the shipper to resolve cargo claims/damages as quickly as possible and agrees that in the event Dynamex is held liable for any loss or damage to any Item caused by Contractor's intentional or negligent acts or omissions, Dynamex shall have the right to recover such amount from Contractor.

11. **CONFIDENTIAL INFORMATION/NON-SOLICITATION:** In consideration of the parties' desire to establish a business relationship, and Dynamex's agreement to provide Contractor with confidential proprietary information acquired or to be acquired or developed by and belonging to or relating to Dynamex or customers of Dynamex or any of its wholly owned subsidiaries including, but not limited to, the names and addresses of its customers and suppliers; technology used; route information; prices charged and paid and other information, data, and documents now existing or previously developed or acquired by Dynamex customers, and Contractor's recognition that the secrecy of such confidential information gives Dynamex a significant advantage in developing, marketing and maintaining Dynamex's business. Contractor agrees that:

    (a)    It will not directly cause, permit or aid in the disclosure to or use by any person, corporation, or entity of any confidential information, at any time, for whatever reasons, except as required by law with prior written consent by Dynamex;

    (b)    That during the term of this Agreement and for a period of six (6) months thereafter, Contractor shall not either directly or indirectly either for itself or for any other person, firm, company or corporation, use such confidential proprietary information to solicit, divert, or take away any of the customers of Dynamex;

    (c)    In the event of a breach or threatened breach by Contractor of any of the provisions of this Section, Dynamex shall be entitled to an injunction restraining Contractor from disclosing or using any such confidential proprietary information. Nothing herein, however, shall be construed as prohibiting Dynamex from pursuing any other remedies available to it for such breach or threatened breach including, but not limited to, recovery of damages, costs and attorneys' fees.

12. **TERMINATION OF AGREEMENT**

    (a)    As the master contract setting forth the terms applicable to all Contracted Services, this Agreement shall remain in full force and effect until terminated in accordance with one of the following options, with early termination resulting in the penalties described further below:

        (i)    Subject to any term or other limitation contained in a valid and effective Addendum to this Agreement, this Agreement may be terminated without cause by either party upon thirty (30) days' prior written notice to the other, with the date of mailing commencing the notice period;

        (ii)    In the event a party commits a Material Breach of this Agreement, the other party may terminate this Agreement immediately upon written notice to the breaching party, with such notice specifying the breach relied upon.

    (b)    Early termination of this Agreement by either party without proper notice (as established in subsection (a) above) shall result in liquidated damages of $100.00 for each day that notice is not properly provided, up to a maximum amount of $500.00. The parties acknowledge that liquidated damages are appropriate because actual damages are not reasonably ascertainable. A party that receives notice of termination must continue to fulfill its obligations under this Agreement for the entire notice period, with the failure to do so constituting early termination subject to the foregoing liquidated damages provision.

    (c)    The following is a non-exhaustive list of acts, omissions and occurrences that shall individually constitute a "Material Breach" of this Agreement:

        (i)    failure by either party to carry and keep in full force and effect at all times during the Term of this Agreement the policies of insurance required by this Agreement or as required by law;
        (ii)    Contractor willfully fails or refuses to perform Contracted Services it is contractually bound to perform;

(iii) violation of applicable federal, state and local laws regulating transportation services, including by the proven use of drugs or alcohol by Contractor or Contractor's Personnel while in the performance of Contractor's services under this Agreement;

(iv) operation of a vehicle while performing the services hereunder by Contractor or Contractor's Personnel without a valid and current commercial or other driver's license as required by law;

(v) the filing by or against either party of a claim or cause of action under any bankruptcy related law or statute;

(vi) failure by Contractor to maintain any necessary state or federal motor carrier authority required by applicable law to transport or deliver Packages under this Agreement;

(vii) failure by Contractor to comply and satisfy all requirements imposed by federal transportation laws and regulations, including compliance with the Driver/Vehicle Examination Report and CSA Policy and Metrics applicable to Dynamex;

(viii) the providing of false or fraudulent documentation by either party to the other party;

(ix) failure of Dynamex to pay Contractor any undisputed settlement amount within seven (7) days of Dynamex's receipt of written notice of late payment from Contractor;

(x) failure of Dynamex to allow Contractor to independently operate Contractor's business; including interference by Dynamex with Contractor's control over aspects of Contractor's business; and/or

(xi) failure of either party to perform as required pursuant to the terms of this Agreement, if such breach is not cured within three (3) days of receipt of written notice of the breach.

**13.** **WAIVER:** The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall not be construed as a waiver of future acts or happenings.

**14.** **HEADINGS:** The headings set forth herein have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

**15.** **GOVERNING LAW:** The laws of the state of residence of the Contractor, without regard to the conflicts of laws principles thereof, shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties. The parties voluntarily agree to waive any right to a trial by jury in any suit filed hereunder and agree to resolve any dispute pursuant to the terms of Section 16 below.

**16.** **ARBITRATION PROVISION**:

(a) **Arbitration of Claims**: In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (hereafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either Contractor or Dynamex arising out of or related to this Agreement, Contractor's relationship with Dynamex (including termination of the relationship), or the service arrangement contemplated by this Agreement, including cargo claims and payment disputes, but excluding all claims that may be adjudicated in small claims court. The provisions of this Arbitration Provision shall remain in force after the parties' contractual relationship ends. BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.

(i) Claims Covered By Arbitration Provision: Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision regardless of whether brought by Contractor, Dynamex or any agent acting on behalf of either: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to Contractor's relationship with Dynamex, including termination of the relationship; and (3) disputes arising out of or relating to the interpretation or application of this Arbitration Provision, but not as to the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, meal or rest periods, expense reimbursement, uniform maintenance, training, termination, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims (excluding workers' compensation, state disability insurance and unemployment insurance claims).

(ii)    <u>Limitations On Application Of This Arbitration Provision</u>: This Arbitration Provision does not apply to claims for workers compensation, state disability insurance or unemployment insurance benefits. Regardless of any other terms of this Arbitration Provision, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), and the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

(iii)    <u>Class Action Waiver</u>:  Contractor AND Dynamex AGREE TO BRING ANY DISPUTE IN ARBITRATION ON AN INDIVIDUAL BASIS ONLY, AND NOT ON A CLASS, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL REPRESENTATIVE ACTION BASIS. ACCORDINGLY:

(A)    There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

(B)    There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.

(C)    There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances, the private attorney general action must be litigated in a civil court of competent jurisdiction.

(b)    **Arbitration Procedure**:  Except as provided in this Arbitration Provision, any controversy or claim covered by this Arbitration Provision shall be settled by arbitration administered by the American Arbitration Association ("AAA") and shall be held in accordance with the applicable AAA Arbitration rules. These rules are available at www.adr.org. The Arbitrator shall be selected by mutual agreement of Contractor and Dynamex. Unless Contractor and Dynamex mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an Arbitrator, who shall act under this Arbitration Provision with the same force and effect as if the parties had selected the Arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the geographic area where Contractor performed delivery services arranged by Dynamex, unless each party to the arbitration agrees in writing otherwise. If Contractor no longer resides in the general geographical vicinity where Contractor performed delivery services, Contractor and Dynamex shall agree to a location of the arbitration within 45 miles of where Contractor resides, provided it is within the same state in which Contractor performed delivery services arranged by Dynamex. In arbitration, the parties shall have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

(c)    **Making A Demand For Arbitration**: A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. Any demand for arbitration made to Dynamex shall be sent to the same location identified in Section 18 below (Notice). The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

(d)    **Attorney's Fees and Arbitration Costs**: Each party shall pay the fees for its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. Costs incidental to the arbitration, including the cost of the Arbitrator and the meeting site ("Arbitration Costs") will be borne by Dynamex and Contractor equally, unless otherwise required by applicable law. Any dispute regarding a party's obligation to pay Arbitration Costs shall be determined by the Arbitrator.

In the event Contractor contends that, as a matter of law, it is not responsible for payment of any Arbitration Costs, Contractor shall have no obligation to pay any portion of the contested Arbitration Costs until, and only if, the Arbitrator determines that Contractor is responsible for the costs. If necessary for arbitration of the dispute, Dynamex agrees to cover the amount of the Arbitration Costs contested by Contractor until such time as the Arbitrator determines payment responsibility. If the Arbitrator determines that Contractor is responsible for any amount of the Arbitration Costs already paid by Dynamex, Contractor shall remit payment of that amount to Dynamex within 30 days of the Arbitrator's determination.

(e)    **Post-Arbitration Procedures**: Within 30 days of the close of the arbitration hearing (which period may be extended by stipulation of the parties), any party shall have the right to prepare, serve on the other party and file with the Arbitrator a post-arbitration brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in its or her or his individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision. The Arbitrator shall issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

(f)    **Application to Existing Claims and Controversies**: This Arbitration Provision is intended broadly to apply to all controversies hereafter arising out of or related to the parties' relationship or Contractor's performance of services for Dynamex or its customers, as well as any existing controversy that has arisen from the parties' relationship or Contractor's performance of services for Dynamex or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

(g)    **Opt-Out Provision**: If Contractor does not want to be subject to this Arbitration Provision, Contractor may opt out by notifying Dynamex in writing of Contractor's desire to opt out of this Arbitration Provision, which writing must be dated, signed and submitted by U.S. Mail or hand delivery to Dynamex at the address indicated in Section 18 below (Notice). In order to be effective, the writing must clearly indicate Contractor's intent to opt out of this Arbitration Provision and the envelope containing the signed writing must be post-marked within 30 days of the Effective Date. Contractor's writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by Dynamex. Should Contractor not opt out of this Arbitration Provision within the 30-day period, Contractor and Dynamex shall be bound by the terms of this Arbitration Provision.

(h)    **Right to Consult with an Attorney**: Contractor has the right to consult with private counsel of Contractor's choice with respect to any aspect of, or any claim that may be subject to, this Arbitration Provision. Subject to the exceptions listed in Section 16(a)(iii)(A)-(C), in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

| Acknowledgment of Arbitration Provision | |
|---|---|
| I hereby certify that I have read the above Arbitration Provision and understand that it will apply to me unless I choose to opt-out as explained above. | _____<br>Contractor's Signature<br><br>Date: _____ |

17.    **ENTIRE AGREEMENT:** This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersedes any and all oral or written agreements or negotiations relating to any such subject matter. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein. This Agreement supersedes any prior agreement between Dynamex, its predecessors, successor or affiliates and Contractor relating to the subject matter hereof. Any modification of or amendment to this Agreement and/or any Addenda, Attachment, or Schedule hereto will be effective only if it is in writing signed by the party to be charged.

18.    **NOTICE:** Any notice to be given hereunder by a party may be effected by overnight delivery in writing or by registered or certified United States mail, postage prepaid. Notices shall be addressed to the parties at their respective addresses identified below or at such other address as a party may designate by giving written notice in accordance with the provisions of this Section.

19. **REFORMATION AND SEVERABILITY:** If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

20. **ASSIGNMENT:** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their assignees. Dynamex may assign this Agreement, without consent or written confirmation from Contractor, to any corporation which controls Dynamex, is controlled by or under common control with Dynamex, or to any corporation resulting from the merger of or consolidation with Dynamex. Provided Contractor is in good standing hereunder, Contractor shall, with thirty (30) days prior written notice to Dynamex, have the right to assign his/her rights and obligations hereunder to another individual ("Replacement Contractor") who is qualified to provide services of Contractor under this Agreement, and, provided Contractor or Contractor's representatives continue to provide services under this Agreement up to the effective date of such assignment, Dynamex shall thereupon enter into a new agreement with the Replacement Contractor on substantially the same terms and conditions as herein contained. Any consideration to be paid by Replacement Contractor on account of such assignment shall be strictly a matter of agreement between Contractor and Replacement Contractor unless otherwise agreed by Contractor. Dynamex shall have no other obligation whatsoever either to secure a Replacement Contractor for the benefit of Contractor, or to assure any payment to Contractor on account of Contractor's assignment of this Agreement.

21. **CONSTRUCTION AND REVIEW:** IN THE EVENT OF ANY AMBIGUITY IN ANY OF THE TERMS OF THIS AGREEMENT, INCLUDING ANY EXHIBITS HERETO, SUCH AMBIGUITY SHALL NOT BE CONSTRUED FOR OR AGAINST A PARTY ON THE BASIS THAT THE PARTY DID OR DID NOT AUTHOR THE SAME. EACH PARTY ACKNOWLEDGES AND AGREES THAT THEY (A) HAVE HAD ADEQUATE OPPORTUNITY TO REVIEW THE TERMS AND CONDITIONS AND TO REFLECT UPON AND CONSIDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, (B) HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL REGARDING SUCH TERMS, AND (C) FULLY UNDERSTAND THE TERMS OF THIS AGREEMENT AND HAVE VOLUNTARILY SIGNED IT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**DYNAMEX OPERATIONS           INC.**          **CONTRACTOR**

By: _____          By: _Kevin Wheeler_____

       (Print Name)                                   (Print Name)

Signature: _____          Signature: _Kevin Wheeler_____

Address: _____          Address: _607 Turtledove Ln._____

City/State/Zip: _____          City/State/Zip: _New Lenox, IL 60451_

**Notice to Contractor**: Please keep copy of the Agreement and all Addenda for your records.

## Addendum A
**Independent Contractor Agreement**

### SERVICE PROPOSAL AND AGREEMENT

*[PURPOSE: This form is to be used by Contractor to bid for service opportunities, customer engagements and other contract services brokered and/or subcontracted by Dynamex. If Contractor's bid is accepted, this form is to be incorporated into the parties' Independent Contractor Agreement as Addendum A. This form can be used to submit bids and other proposals for any type of service opportunity, including route and contingency on-demand work.]*

This Addendum A to the Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated. Unless otherwise specified, this Appendix A shall supplement – not supersede or replace – any previously executed Addendum A.

1.  **"CONTRACTED SERVICES" AND SERVICE FEES**

    **A.**      Unless otherwise agreed to in writing, all service opportunities ("Engagements") offered to and accepted by Contractor shall be subject to the terms described below, which define the scope of the "Contracted Services" (or "Services") to be performed by Contractor, as well as the fees Contractor shall charge for such services. The parties shall indicate their agreed upon preferences by placing a "check mark" in the appropriate box or boxes and, when applicable, by inserting the details of the negotiated arrangement in the appropriate fields.

| "PRE-NEGOTIATED" ROUTE SERVICE: | | ☐ YES    ☐ NO |
|---|---|---|
| **Services** | "Customer" Name: | |
| | Route Name/No.: | |
| | Contracted Services: | |

| | | | |
|---|---|---|---|
| **Fees** | Route Fees | Monthly Rate:    $_____ | |
| | | Weekly Rate:    $_____ | |
| | | Daily Rate: $_____ (or list by weekday if variable): | |
| | | M: $____ T: $____ W: $____ H: $____ F: $____ Sa: $____ Su: $____ | |
| | Package Based Fees (Flat) | Regular packages | $_____/package |
| | | Large packages | $_____/package |
| | Package Based Fees (Variable) | 1ˢᵗ _____ packages | $_____/package |
| | | _____ to _____ packages | $_____/package |
| | | _____ to _____ packages | $_____/package |
| | | _____ to _____ packages | $_____/package |

| | | | |
|---|---|---|---|
| | | Large Packages | $_____/package |
| Stop Based Fees | | 1st _____ stops | $_____/stop |
| | | _____ to _____ stops | $_____/ stop |
| | | _____ to _____ stops | $_____/ stop |
| | | _____ to _____ stops | $_____/ stop |
| Mileage Based Fees | | $_____/mile (one way) | |
| | | $_____/mile (round trip) | |
| | | $_____/day (Stem only; Rt/Cust._____) | |
| % of Net Revenue | | _____% | |

| | | |
|---|---|---|
| **"PRE-NEGOTIATED" ON-DEMAND DELIVERY SERVICE:** | | ☐ YES  ☐ NO |
| Services | Customer (omit if variable): | |
| | Contracted Services: | |
| Fees | Per Engagement | _____ miles or less from point of origin: $_____ |
| | | _____ miles or more from point of origin: $_____ |

| | |
|---|---|
| **"AS NEGOTIATED" DELIVERY SERVICE:** | ☐ YES  ☐ NO |
| Routed Delivery Service: | Scope of service and fees negotiated at time of offer/acceptance |
| On-Demand Engagements: | Scope of service and fees negotiated at time of offer/acceptance |

**B.**     For the purpose of calculating "miles from point of origin" for on-demand Engagements, Contractor's location at the time the Engagement is accepted shall be used.  As used above, the term "Large Package" shall refer to any individual package weighing 20 lbs. or more.

**C.**     Either party shall have the right to renegotiate Contractor's service fees and/or terminate any Engagement subject to this Addendum A upon 15 days' written notice of intent to do so.

**D.**     Contractor may modify or withdraw the above proposal at any time prior to written acceptance by Dynamex. Contractor may bid on other routes or on demand or distribution work brokered and/or subcontracted by Dynamex at any time by submitting a supplemental written proposal. Contractor understands that Dynamex may offer Contractor Engagements based upon the rates agreed upon above and, unless a new rate is negotiated, the rate specified above shall apply (as may be reduced or otherwise modified by either verbal or written approval of the Contractor and Dynamex, including the terms of the Agreement and this Addendum). Dynamex acknowledges that the above terms constitute a proposal on behalf of Contractor, and Contractor acknowledges that acceptance by Dynamex of this proposal shall not be construed as guaranteeing to Contractor that Dynamex will provide Contractor any specific volume of offered work.

**E.**     Contractor shall receive a portion of any fuel surcharge received by Dynamex from any Customer in accordance with the standard Dynamex fuel surcharge program, if any, in effect from time to time.

**2.**     <u>CUSTOMER SPECIFICATIONS</u>

**A.**     Subject to the terms of the Agreement, Contractor agrees to perform the Contracted Services in accordance with all Customer specifications, including those identified below:

| DRUG AND ALCOHOL, BACKGROUND, MVR TESTING: | ☐ Yes ☐ No |
|---|---|

If the "Yes" box is checked, the services for one or more Customer to be serviced by Contractor requires individuals performing the Contracted Services to be subject to certain drug and alcohol testing, background checks or motor vehicle report checks. Contractor agrees to comply with the Customer's specifications by using only drivers and other personnel who have satisfied the requirements specified by the Customer. Prior to performance of the Contracted Services, Contractor understands that evidence of compliance with this requirement must be submitted to or obtained by Dynamex.

| SECURITY IDENTIFICATION | ☐ Yes ☐ No ☒ 'TBD' |
|---|---|

If the "Yes" box is checked, for security reasons one or more Customers to be serviced by Contractor requires individuals performing the Contracted Services to wear "security identification apparel" to identify the individual as a professional delivery provider affiliated with Dynamex. When applicable, Contractor agrees to comply with this security requirement by arranging for all personnel performing the Contracted Services to wear the proper security identification apparel. Contractor's personnel shall have no obligation to wear or display a security identification badge or apparel at any time other than while on Customer's or its customer's premises.

If the "TBD" box is checked, it is unknown whether one or more Customer to be serviced by Contractor requires individuals performing the Contracted Services to wear "security identification apparel." Accordingly, Contractor shall be informed of any such requirement at the time Dynamex offers and/or Contractor accepts a service Engagement subject to such a security identification requirement. If Contractor chooses to accept an Engagement subject to a Customer's Security Identification requirement, Contractor agrees to abide by the requirement in the manner described in the paragraph immediately above.

**3.**     <u>CHARGE BACK ITEMS</u>

**A.**     Contractor expressly authorizes the following items to be charged back and deducted from Contractor's service fees and/or settlement payments, as also addressed in the parties' Agreement:

| CHARGE BACK ITEM | COST | ADMINISTRATIVE CHARGE |
|---|---|---|
| Background/MVR | Actual | None |
| Communication Device Rental | See Appendix D | None |
| Cargo Claim | Actual loss up to $1,000 | None |
| C.O.D. Charges | Actual | None |
| Drug Test | Actual | None |
| Fines and Penalties | Actual | None |
| Property Damage | Actual | None |
| Insurance Costs | See Appendix C | See Appendix C |

**B.**    Contractor agrees that Dynamex may charge back to Contractor any other expenses or cost incurred by Dynamex for which Contractor is responsible for under the Agreement, this Appendix or as otherwise agreed to by the parties. Contractor hereby waives any objection to any charge back item unless Contractor notifies Dynamex of Contractor's disagreement with such charge back within thirty (30) days of the charge back.

**THIS Addendum A** is agreed to by the undersigned parties as of the latest date set forth below.

DYNAMEX OPERATIONS _____, INC          Contractor

Dated: _____, 20 ____              Dated: November 14, 20 13

                                             DBA/Name: Kevin Wheeler

Signature: _____                   Signature: Keri Wheeler

By/Title: _____                     By/Title: Keri Wheeler

## Addendum B
### Independent Contractor Agreement

### DOT REQUIRED VEHICLE LEASE AGREEMENT
**[Only For Contractors Operating Under Dynamex's DOT Authority]**

This DOT Required Vehicle Lease Agreement ("Lease Agreement") is entered into by and between **DYNAMEX OPERATIONS** _____**INC.,** ("Dynamex" or "Lessee") and _____, ("Contractor" or "Lessor"), as of this _____ day of _____, 20___ ("Effective Date"). This Addendum B, together with the provisions of the parties' Independent Contractor Agreement ("Agreement"), shall constitute the "Lease" required by the United States Department of Transportation ("DOT") regulations at 49 CFR Part 376 ("Leasing Regulations").

1.        **Lease and Use of Equipment.**  Pursuant to the Leasing Regulations, Contractor agrees to lease to Dynamex the Equipment identified below for the provision of DOT regulated services pursuant to the parties' Agreement.  Dynamex agrees to issue to Contractor a "Statement of Lease" showing that the Equipment is leased to Dynamex, and Contractor agrees to carry the Statement of Lease on the Equipment at all times.  Contractor further agrees that the Statement of Lease will constitute the receipt for the Equipment required by the Leasing Regulations.

| # | Veh. Year | Veh. Make/Model | Veh. Description | VIN |
|---|-----------|-----------------|------------------|-----|
|   |           |                 |                  |     |
|   |           |                 |                  |     |
|   |           |                 |                  |     |

2.        **Title to and Registration of Equipment.**  Contractor represents and warrants that Contractor has title to or is otherwise authorized to contract the Equipment to Dynamex, that the Equipment listed below is properly titled and registered, and that the information in this Lease Agreement is complete and accurate.  Contractor also certifies that the Equipment meets the requirements of all applicable federal, state and municipal laws and regulations.

3.        **Selection, Replacement, Addition and Substitution of Equipment.**  The selection (including number and cargo capacity), replacement and addition of Equipment are within the discretion of Contractor, provided that the Equipment is sufficient to perform the contracted Services and satisfies all other standards agreed upon in the parties' Independent Contractor Agreement.  Contractor may substitute for the Equipment on a temporary basis, not to exceed 30 business days.  Contractor agrees that the Equipment will meet all DOT requirements as set forth in 49 CFR Part 393 and other safety requirements imposed by law.

4.        **Identification and Marking of Equipment.**  During the operation of the Equipment for the provision of the Services, Contractor agrees to mark all Equipment with all identification logos, numbers, marks and insignia as required under applicable federal, state and municipal regulations, including 49 CFR Part 390.  Contractor may, at its option, and will if required by law, mark the Equipment so as to indicate to the public that the Equipment is owned or operated by Contractor.  When Equipment is withdrawn from Services, or upon termination of the Lease Agreement, Contractor shall be responsible for removing all identification marks and devices required by law and this Lease Agreement, and to remove or mask all such identification marks and devices while operating the Equipment for any purpose other than providing the Services.

5.        **Equipment Maintenance and Inspection.**  Regardless of the size or weight of the Equipment being used by Contractor to provide Services under the Agreement, Contractor agrees, at Contractor's expense, to have the Equipment maintained and inspected in accordance with the standards specified in 49 CFR Parts 393 and 396, which requires, among other things, that all vehicles to be periodically inspected, properly lubricated and free of oil and grease leaks, and which forbids operation of a vehicle in such a condition as is likely to cause an accident or breakdown.  As required by law, Contractor further agrees to provide Dynamex with documentation of timely maintenance and inspection of the Equipment in accordance with the periodic mandatory vehicle maintenance and inspection regulations required by any federal, state or municipal agency with jurisdiction over the operations described in this Agreement, including but not limited to 49 CFR Part 396. The parties agree that the periodic maintenance schedule recommended by the Equipment manufacturer will be deemed to meet the maintenance requirements of this Lease Agreement, absent specific federal, state or municipal regulations to the contrary.

6. **Equipment-Related Operating Expenses.** Contractor agrees to bear all costs and expenses related to operation of the Equipment, whether empty or loaded, including, without limitation, all risks of depreciation, all maintenance (including cleaning and washing), fuel, oil, tires, repairs, business taxes, consumption and sales taxes, personal property taxes, ad valorem taxes, fuel and road-use taxes, ton-mile taxes, insurance coverage as provided herein, detention and accessorial services, licenses, permits, vehicle inspection fees, vehicle registration renewal fees, base plates, and all highway, bridge and ferry tolls. Contractor is responsible for and will pay all of Contractor's expenses related to the loading or unloading of the Equipment. Contractor acknowledges that the fees paid for the anticipated, but not guaranteed, amount of the Services performed under this Agreement is intended to fairly compensate Contractor for all such incurred operating costs, and that Contractor is responsible for payment of all its operating costs. Contractor agrees to pay all fines, including parking and traffic fines and penalties, imposed for violation of any law or regulation or by the DOT where such violation results from the acts or omissions of Contractor or its drivers. Except when the violation results, in whole or part, from the acts or omissions of Contractor or its drivers, Dynamex will assume the risks and costs of fines for overweight or oversize loads when trailers are preloaded and sealed by Dynamex, when loads are containerized, when oversized or overweight loads are improperly permitted, or when the trailer or lading is otherwise outside of Contractor's control. Per 49 CFR 376.12, Contractor is not required to purchase or rent any products, equipment or services from Dynamex as a condition of entering into this Lease Agreement.

7. **Additional Operating Authority.** If, at any time during the term of this Lease Agreement, applicable state regulations require Contractor to obtain intrastate operating authority, Contractor agrees, at its own expense, to acquire and maintain such operating authority and to cooperate with Dynamex in altering the arrangements set forth in this Agreement to the extent necessary to ensure compliance by Contractor and Dynamex with any such state regulations, practices and procedures. Unless the parties agree otherwise, to facilitate Contractor's payment of licenses, taxes and fees, where the parties agree or are required by statute or regulation, Contractor hereby authorizes Dynamex to pay these charges on Contractor's behalf and to charge Contractor for any such payments, together with any expenses incurred by Dynamex in connection with their payment. Contractor agrees that unless strictly prohibited by law, any licenses, permits, assessments and taxes paid by Dynamex on behalf of Contractor pursuant to this subsection may be charged-back to or deducted from any fees payable to Contractor by Dynamex in accordance with the terms of the parties' Agreement.

8. **Compliance with Leasing Regulations.** The purpose of this Section 8 is to conform the Lease Agreement to the Leasing Regulations. Nothing in the provisions required by 49 CFR Part 376 is intended to affect whether Contractor or its drivers are independent contractors or employees of Dynamex or its customer.

(A)     Use by Dynamex. The Equipment will be for Dynamex's exclusive possession, control, and use when Contractor is providing Services under this Agreement. Dynamex will assume complete responsibility for the operation of the Equipment for the duration of the Agreement as required by 49 CFR Part 376. While the Equipment is on Dynamex premises, Contractor agrees that Dynamex will have access to the cargo areas of the Equipment for the purpose of loading and unloading packages, scanning packages and verifying Dynamex's load condition and accuracy. Notwithstanding the provisions of this Section 8(A), Dynamex will have no right or authority, without the consent of Contractor, to operate the Equipment for any purpose.

(B)     Use by Contractor. Contractor may use the Equipment for other commercial or personal purposes, provided that during such times, Contractor removes or masks Dynamex's DOT number and all logos, marks and insignia identifying Dynamex, and provided further that such use is in compliance with 49 CFR Part 376.

9. **Term and Termination.** This Lease Agreement shall commence on the Effective Date and shall remain in effect for an initial period of at least sixty (60) days and continue thereafter until terminated as provided herein or upon termination of the parties' Independent Contractor Agreement.

LESSEE: DYNAMEX OPERATIONS _____, INC.          LESSOR: Contractor

By: _____          By: _____

Signature: _____          Signature: _____

Address: _____          Address: _____

City/State/Zip: _____          City/State/Zip: _____

## Addendum C
### Independent Contractor Agreement

## Worker's Compensation And/Or Occupational Accident Designation/Election Form

This Addendum C to the Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated.

Contractor hereby attests to be duly and properly organized as a sole proprietorship/partnership/S Corporation/C or Corporation/LLC in the State wherein the majority of the Services contemplated by the parties' Independent Contractor Agreement are to be performed. By the initials and designations below, Contractor further attests that it (including its Personnel) is covered by a Worker's Compensation Insurance policy or, if permitted by law, Contractor maintains an Occupational Accident ("Occ/Acc") Insurance policy, including as may be offered and purchased through Dynamex's insurance broker/carrier, as designated and agreed upon below.

Contractor designates/elects the following options: (*mark ONLY one*)

_____ (initial)   Contractor has procured Worker's Compensation: Carrier: _____;

   Policy number : _____; Expiration Date: _____

_____ (initial)   Contractor has procured Occ/Acc Insurance independently: Carrier): _____;

   Policy number : _____; Expiration Date: _____

_____ (initial)   Contractor, through the undersigned, hereby elected to purchase Occ/Acc Insurance from Dynamex's insurance broker/carrier, as detailed further in the policy documents and application (Consultation with your own insurance professional is recommended before selecting this option.) By executing this Addendum C, Contractor hereby authorizes Dynamex to automatically deduct from Contractor's service fees and/or settlement payments any and all costs and administration fees incurred under the Occ/Acc policy. Contractor further understands and agrees that, as an independent contractor, Contractor is not legally entitled to pursue workers compensation claims through or against Dynamex or its customers, and further agrees to indemnify Dynamex for all costs incurred in successfully defending against any worker's compensation claim or dispute filed or submitted by Contractor (to the extent allowed by law).

### Contractor

Dated: _OCTOBER 31_, 20 _14_

DBA/Name: KEVIN P. WHEELER

Signature: _____

By/Title: _INDEPENDENT CONTRACTOR_

## Addendum D
### Independent Contractor Agreement

## OPTIONAL COMMUNICATION EQUIPMENT RENTAL AGREEMENT

This Addendum D to the Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated.

1.　　**Purpose.** The parties recognize that in the modern era, the recording and transmittal of information regarding the movement of cargo is a central component of any transportation service, including Engagements Contractor agrees to perform for any Customer pursuant to the Agreement. Contractor therefore agrees to record and transmit the shipping and other information required by Customers using a Mobil Data Unit compatible with Dynamex's and/or the Customer's current system (hereafter "MDU").

2.　　**Contractor's Designation.** Contractor represents that it will provide the MDU(s) needed to perform the Services in the manner designated below, and specifically agrees to the terms set forth in the designated option.

[DESIGNATE ONLY <u>ONE</u> OF THE FOLLOWING OPTIONS BY CHECKING THE APPROPRIATE BOXES.]

| Option A – No MDU Equipment Rental: | ☐ Yes  ☐ No |
| --- | --- |

Contractor shall provide all necessary MDU(s) and data plans for performance of the Services, and shall bear the cost and responsibility of furnishing the same.

Contractor voluntarily elects to purchase the following communication plan:

　　　☐ **Technology charge ONLY:** $\underline{\$5.00}$ **per bi-weekly settlement period**

　　　☐ **Technology and scanner rental:** $\underline{\$10.00}$ **per bi-weekly settlement period**

MDU Model: _____, Serial Number: _____

Cradle issued: Yes _____　No _____

By executing this Addendum, Contractor hereby authorizes Dynamex to automatically deduct from Contractor's service fees and/or settlement payments any and all fees and costs associated with Contractor's MDU rentals and communication plan.

| Option B – Scanner Rental: | ☐ Yes  ☐ No |
| --- | --- |

Contractor voluntarily elects to rent MDU(s) identified below:

MDU One:　　　Model: _____, Phone Number: _____

　　　　　　　Cradle issued (Y or N) _____. Auto Charger (Y or N) _____, Case (Y or N) _____

MDU Two:　　　Model: _____, Phone Number: _____

　　　　　　　Cradle issued (Y or N) _____. Auto Charger (Y or N) _____, Case (Y or N) _____

　　　　　　　[Identify additional scanners on separate form]

Contractor voluntarily elects to purchase the following communication and equipment lease plan for each Scanner rented:

☐ Data ONLY:  $39.00 per bi-weekly settlement period

☐ Data and Push-to-Talk:  $43.50 per bi-weekly settlement period

By executing this Addendum, Contractor hereby authorizes Dynamex to automatically deduct from Contractor's service fees and/or settlement payments any and all fees and costs associated with Contractor's MDU rentals and communication plan.

3.      **Rental Terms.**  In the event Contractor elects to rent one or more MDU ("equipment") from Dynamex, the following additional terms shall apply:

(A)      No deposit(s) shall be required as security against loss or damage to the equipment, however, Contractor shall be responsible for all loss and damage (other than regular wear and tear).  In the event the equipment is lost or stolen, Contractor agrees to reimburse Dynamex the fair market value of the lost or stolen equipment. The respective amount shall be refunded if the lost or stolen equipment is subsequently returned.  If any of the equipment is not in good working order or is returned damaged or with undue wear and tear, the equipment shall be repaired to its condition as of the time it was provided to Contractor and the costs of repair shall be borne by Contractor.  Contractor understands and acknowledges that this is a rental agreement and Contractor shall gain no ownership in the rented equipment.

(B)      This agreement may be terminated by either party at any time, after which Contractor shall return all of the equipment within 48 hours of termination.

(C)      Contractor agrees to abide by all government regulations in respect to the use of the equipment.  Contractor shall promptly report to Dynamex any malfunction in the equipment.

**DYNAMEX OPERATIONS _____, INC**

Dated: _____, 20____

Signature: _____

By/Title: _____

**Contractor**

Dated: _____, 20____

DBA/Name: _____

Signature: _____

By/Title: _____

## Addendum E
**Independent Contractor Agreement**

### FMCSA REGULATORY COMPLIANCE
**[Only For Contractors Operating Under Dynamex's DOT Authority]**

This Addendum E to the Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated.

1. **Contractor's Compliance with FMCSR Requirements**.

    (A)      Contractor owns, operates or otherwise controls one or more commercial motor vehicles (**"CMV"**) leased to and/or operated under the DOT motor carrier authority granted to Dynamex (**"Vehicle"**), and, therefore, enters into this Addendum E to affirm its agreement to comply with all applicable Federal Motor Carrier Safety Regulations (**"FMCSR"**).

    (B)      By signing below, Contractor represents and acknowledges that Contractor: (A) has access to and is – and will – remain, familiar with the FMCSRs; and (B) understands that statements contained in this Addendum E (and in the attached copy of the "Vehicle Inspection, Repair and Maintenance Guidelines," (referenced below) concerning or summarizing the contents of the FMCSRs are for general reference purposes only and that the FMCSRs themselves should be consulted for the full, complete and accurate statement and meaning of the related regulations.

    (C)      Contractor further acknowledges it understanding that the FMCSRs apply to CMVs operated by carriers of property involved in interstate (or foreign) commerce that:

    - Have a gross vehicle weight or gross combination weight rating ("GVWR")[1] of more than 10,000 lbs, and/or
    - transport Hazardous Materials which require placarding.

    (D)      Dynamex strictly adheres to all DOT and FMCSA regulatory requirements. Pursuant to these and other related federal laws and regulations, Dynamex is required to assure that all Vehicles and their drivers are in full compliance with the same. Contractor's failure to comply with FMCSRs or Dynamex's guidelines constitutes a Material Breach of the parties' Independent Contractor Agreement. The "attached" copy of the "Vehicle Inspection, Repair and Maintenance Guidelines" is provided for the purpose of ensuring complete understanding and agreement to the parties' respective duties under federal transportation law and regulations , including the vehicle-related requirements in the FMCSRs.

    (E)      Contractor's failure to comply with FMCSRs may result in a violation that subjects Dynamex and/or Contractor to a citation issued by federal, state or local agencies, fines, vehicles being placed OUT-OF-SERVICE and a SAFETY AUDIT, A COMPLIANCE REVIEW and/or a direct intervention by the USDOT.

2. **Contractor's Compliance Requirements Applicable to Government Contractors/Subcontractors**.

    (A)      To the extent Contractor agrees to perform any Engagement involving Services covered by the federal laws and regulations applicable to federal government contractors and subcontractors, Contractor further agrees to:

    (i)      comply with the United States Department of Transportation Leasing Regulations at 49 CFR Part 376;

    (ii)      comply with Executive Order 11246, "Equal Employment Opportunity" (Exec. Order No. 11246, 30 CFR 12319), and all applicable laws, rules, regulations and other governmental requirements relating to equal opportunity, affirmative action and fair treatment of employees;

    (iii)      comply with the Federal Drug Free Work Place Act (41 USC 701, et seq.), and all associated regulations;

---

[1] GVWR is determined by the rating on the manufacturer's plate mounted on the vehicle. Registered weights on state registrations will not be considered.

(iv)     comply with the Service Contract Act of 1965 (41 USC 351, et seq.), and all associated regulations;

(v)     comply with the Aviation and Transportation Security Act of 2001 (49 USC 401, et seq.), and all associated regulations; and

(vi)     comply with Executive Order 12989, as amended, and all associated government regulations. Specifically, [ISP Name] understands and agrees to the requirements of 48 CFR 52.222-54, including those requirements summarized below:

(B)     To the extent legally required, Contractor further agrees to comply with any and all requirements relating to the use of the E-Verify program for Contractor's employee personnel; and, upon request, to provide evidence of such compliance to Dynamex.

**DYNAMEX OPERATIONS ▓▓▓▓ INC**

Dated: ▓▓▓▓▓▓▓▓▓▓, 20▓▓▓

Signature: ▓▓▓▓▓▓▓▓▓▓▓▓▓

By/Title: ▓▓▓▓▓▓▓▓▓▓▓▓▓

**Contractor**

Dated: ▓▓▓▓▓▓▓▓▓▓, 20▓▓▓

DBA/Name: ▓▓▓▓▓▓▓▓▓▓▓

Signature: ▓▓▓▓▓▓▓▓▓▓▓

By/Title: ▓▓▓▓▓▓▓▓▓▓▓

Firmwide:122531430.1 052385.1028